United States Fidelity and Guaranty Company vs. Rhode Island Covering Company, et als. } Eq. No. 11266.

June 18, 1932.

BLODGETT, J. This is a bill of complaint in the nature of a bill of peace brought by the United States Fidelity and Guaranty Company against Rhode Island Covering Company and various other parties to determine the rights of the various parties to benefits of a bond issued by the complainant to the City of Providence and to a certain fund deposited by said City of Providence in the registry of this court.

The entire controversy arises out of a contract dated December 2nd, 1931, between Sarantos Anastos, doing business as the Dean Plumbing Company,

and the City of Providence, whereby Anastos was to provide the entire plumbing system in the Hartford Avenue School in Providence. This contract provided at page 4 that Anastos would

"hold said City of Providence harmless, saved and indemnified from and against all loss, cost, damage, payment and expense on account of all mechanics' liens, and all other liens, and also on account of any and all other lawful claims and demands for work done or materials furnished for doing said work,"

and later, at page 11, the City of Providence made it a condition of payment that Anastos would

"well and faithfully performing said contract in all its parts, and satisfying said City that no liens or other claims for labor done or material furnished in the aforesaid work exist."

Bond was furnished by the said Anastos, the complainant being the surety on said bond, the condition of which was as follows:

"NOW, THEREFORE, if the said Sarantos Anastos shall well and truly keep and perform all the terms and conditions and guarantees of the said contract on his part to be kept and performed, and shall indemnify and save harmless the said THE CITY OF PROVIDENCE, as therein stipulated, and shall also pay for all labor performed or furnished and for all materials used in the carrying out of said contract, then this obligation to be void, otherwise to be and remain in full force and effect."

On the same date as the execution of the bond, December 6, 1929, said Anastos made an assignment to complainant in the following form:

"That the said Company, as surety on said bond, as of this date, shall be subrogated to all our rights, privileges and properties, as principal and otherwise in said contract, and said Principal does hereby assign, transfer and convey to said Company all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable to said Principal at the time of such breach or default, or that may thereafter become due and payable to said Principal on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such moneys and the proceeds of such payments and properties shall be the sole property of the said Company, and to be by it credited upon any loss, damage, charge and expense sustained or incurred by it as above set forth under its bond of suretyship."

On June 17, 1930, Anastos, while engaged in carrying out the contract of the City, borrowed $5,000 from the Industrial Trust Company, one of the respondents in this case, on which it is claimed that there is still due the sum of $4,000. The contract was completed on June 2, 1931, to the satisfaction of the City, there being due Anastos from the City the sum of $12,234.80. There were, however, at the time of the completion of the contract, claims of various subcontractors and materialmen amounting in the aggregate to $18,828.25 and the City refused to pay Anastos the balance due under his contract and deposited the same, after various negotiations between the parties, with the registry of this Court, in accordance with a decree entered January 14, 1932. Prior to that time, December 18, 1931, the Industrial Trust Company attached the funds retained by the City and it was provided in the decree that the rights of the bank, by its attachment, if any, were expressly protected.

The complainant offered to pay all the subcontractors and materialmen in full, provided on doing so it could get wihout litigation the entire amount held by the City.

The primary question to be determined is whether or not the complainant as surety on the Anastos bond is liable to subcontractors and materialmen.

This is a question of great importance and has not yet received judicial determination in this State. There is a sharp conflict of authority and the briefs filed by the various parties in interest have disclosed the uncertainty on this question in the number of cases cited on both sides of the proposition.

The view that the contract cannot be held to impose on the surety the obligation of paying materialmen and subcontractors is sustained in the following cases:

> *Formire* v. *National Surety Co.*, 229 N. Y. 44, 127 N. E. 472 (1920);
>
> *Standard Gas Power Corp.* v. *New England Casualty Co.*, N. J. 1917, 101 Atl. 281;
>
> *Skillman* v. *U. S. Fidelity and Guaranty Co.*, N. J. 1925, 130 Atl. 564;
>
> *Green County* v. *Southern Surety Co.*, 292 Pa. 304;
>
> *Cleveland Metal Roofing & Ceiling Co.* v. *Gaspard et al.*, Ohio 1914, 106 N. E. 9;
>
> *Buffalo Cement Co.* v. *McNaughton*, 35 N. Y. Supp. 453; affirmed in 156 N. Y. 702, 51 N. E. 1089;
>
> *Walsh* v. *Featherstone*, 67 Minn. 103;
>
> *Vrooman* v. *Turner*, 69 N. Y. 20;
>
> *Thomas Mfg. Co.* v. *Prather*, 65 Ark. 27;
>
> *Dickinson* v. *McCoppin*, 121 Ark. 414-418;
>
> *Baldwin* v. *Ludwig*, 173 N. Y. Supp. 135.

The contrary view is illustrated in such cases as

> *Byron Lumber and Supply Co.* v. *Page*, 146 Atl. 293, 109 Conn. 256;
>
> *National Surety Co.* v. *Paul Miller Co.*, 104 Miss. 626;
>
> *Union Sheet Metal Works* v. *Dodge*, 129 Cal. 390;
>
> *Lacross Lumber Co.* v. *Swartz*, 147 So. Western 501;
>
> *Hipwell* v. *National Surety Co.*, 141 (Iowa) 318;
>
> *So. Western Portland Cement Co.* v. *Williams*, 251 Pac. 380;
>
> *William H. Toner & Co.* v. *Long et al.*, 79 N. H. 458, 111 Atl. 311.

While this Court appreciates the great weight which must be attached to the opinions of the Courts that have held a surety not liable to sub-contractors and materialmen, the Court, nevertheless, is inclined to the view that the contract was intended by the parties to provide that the payment for the labor and materials which the contractor should use for the construction of the building, and for which the City should pay him, should in turn be paid by him to the parties supplying them. It was a condition of the contract that Anastos, before receiving payment, should satisfy the City that he had well and faithfully performed the contract in all its parts and that no liens or other claims for labor done or materials furnished exist, and that it was a specific provision of the bond that said Anastos should well and truly keep and perform all the terms and conditions of the said contract and *should also pay for all labor performed or furnished, and for all materials used in the carrying out of said contract.*

The Court believes that the language of the contract is not open to doubt and that the contract was clearly intended to operate for the benefit of such persons as should furnish labor

or materials for the erection of the schoolhouse.

The fact that the provisions of the lien law were not available to sub-contractors and materialmen as against the City is the Court feels, a valid reason for the City to require that the rights of such persons should be protected. It is surely to the benefit of the City that the credit of general contractors should be sound and protected by bond, since thereby the City is assured that no person would be restrained from furnishing labor and materials of the best quality for use in city contracts.

In this connection the following language in 2 Dill. Mun. Corp. (5th ed.) 1266, is significant.

"In the exercise *of its general power* to contract and without express statutory authority, *a city may require a contractor to give a bond* conditioned for the payment of such persons as *shall supply materials or furnish labor*. The exaction of this bond is within the ordinary administrative duties of the officers of the city, although there may be no statute expressly requiring it. By entering into the contract the city clothes the contractor with a certain degree of credit, and it is to its interest that those furnishing labor and material to the city should know that they are justified in relying upon the credit of the contractor. A reasonable certainty that materials and labor will be paid removes the temptation to furnish inferior work and materials which always exists when dealing with persons of uncertain credit. The bond therefore operates to protect the city and is for its interests. There is also a moral obligation which the city may recognize (although it is not bound to do so), that the city should so far as possible protect laborers and mechanics and see that they are not sufferers by the construction of the work. Laborers, mechanics, and materialmen are not permitted, in the absence of an express statutory provision, to file liens upon public property, and a bond conditioned for their payment is their only protection. Hence, *the weight of authority* is to the effect that a bond conditioned for their payment may be exacted *without express statutory authority* and that the person for whose benefit the bond is made, *i. e., the materialman*, mechanic, or subcontractor, *may maintain an action*, upon it to recover any sums due them."

Since Rhode Island follows the majority in the American rule that a third person may sue upon a contract made for his benefit, *Wood v. Moriarty*, 15 R. I. 518, the Court is of the opinion that the complainant is liable upon the bond to the sub-contractors and materialmen.

The Court is not impressed with the argument that, since this is a contract under seal, the rule of *Woonsocket Rubber Co. v. Bannigan*, 21 R. I. 146, wherein it was decided that a person not a party to a contract under seal cannot sue upon it, should apply to this case. This is a proceeding in equity and the Court feels, under the broad powers of the equity court, it can be assumed that if the sub-contractors and materialmen had proceeded in law, they would have proceeded, as they had a perfect right to do, in the name of the City of Providence.

The second question to be determined is whether or not the complainant is liable as surety to the Industrial Trust Company, at least to the extent that the money loaned by the Industrial Trust Company was used for the purchase of labor and materials.

The Court does not feel that the surety company is liable to the bank. The Court cannot accept the view that

money loaned to a contractor, although used for paying for material, can be construed to be material used in the performance of a contract.

Southern Surety Co. v. J. R. Hold Land & Lumber Co., 14 F. (2nd) 411.

Moreover, in this case the complainant is subrogated to the rights of Anastos and has received a specific assignment from him of all funds which may be due from the City. Between the bank, which loaned to Anastos as a mere volunteer, and the complainant, the Court feels that in the event that the complainant discharges its obligation to the materialmen and sub-contractors, it should receive the whole of the sum deposited by the City of Providence.

As to the matter of interest, the Court is of the opinion that interest should be awarded from the date of furnishing of material and labor to the date when complainant notified the parties of its willingness to pay.

A decree should be drawn accordingly.

For complainant: Gardner, Moss & Haslam.

For respondents: Comstock & Canning, Samuel H. Workman, Joseph H. Coen, H. A. Tuell, G. J. Sheehan, John C. Mahoney, Walling & Walling, Flynn & Mahoney, J. E. Mullen, Russell W. Richmond.