Hillsborough, ⎱
June 25, 1920. ⎰

WILLIAM H. TONER & a. v. GEORGE BAKER LONG & a.

If contemporaneously with the execution of a written contract to perform work for a municipality the contractor delivers to it a bond executed by himself and surety, guaranteeing the performance of his contract and the payment by him of all labor employed therein, the contract and the bond constitute an entire agreement.

By the terms of such agreement a contractor and his surety became bound to the municipality not merely to indemnify it for labor it might be compelled to employ should the contractor default in performance, but to guarantee payment of the contractor's bills incurred in his performance of the contract.

If A, for a valuable consideration moving from B and C, agree with B and C to guarantee to C that B will pay his indebtedness to D, as between them A becomes the principal debtor and in equity is bound to pay the debt to D.

In such case, in a suit by D against A to enforce performance, evidence that certain clauses of the contract were inserted therein upon the insistence or not upon the insistence of either party thereto is immaterial; and whether the plaintiff in giving credit to B acted in reliance upon the contract is also immaterial.

BILL IN EQUITY, praying that the defendant, the Fidelity and Deposit company be ordered to pay the plaintiffs' bill against Long in accordance with the provisions of a bond of the Deposit company, running to the city of Manchester, one of the defendants, and procured by Long in accordance with his contract with the city to build for the city certain buildings. He agreed in writing to provide all the materials and to perform all the work for the erection of the buildings which were known as the Manchester city hospital and the city agreed to pay him for the performance of his undertaking the sum of $56,945. It was also agreed in the contract that, "should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, . . . the owner shall be at liberty after three days' written notice to the contractor to provide any such labor or materials and to deduct the cost thereof from any money then due, or thereafter to become due to the contractor under this contract. The contractor shall furnish owner a surety bond in the sum of $25,000, that the buildings will be completed as called for in plans and specifications."

As a part of this transaction, Long procured a bond, signed by himself as principal and the Deposit company as surety, for the sum above mentioned, running to the city, and duly delivered the same.

It was conditioned for the faithful performance by Long of his agree-
ments with the city and for the payment by him "for all labor per-
formed or furnished and for all materials used in the fulfillment of
said contract."

Subsequently the plaintiffs under a contract with Long, furnished
all labor and materials necessary for the installation of the plumbing,
gas and vacuum systems in the hospital buildings. A substantial
part of the amount due the plaintiffs under this contract has not been
paid, although the plaintiffs have demanded payment from Long,
who is financially embarrassed, and from the Deposit company.

The question was transferred from the May term, 1919, of the
superior court, by *Allen*, J., whether upon the foregoing facts the
Deposit company is liable to the plaintiffs for the amount due them
from Long.

Certain exceptions taken to evidence are stated in the opinion.

*Taggart, Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the
plaintiffs.

*Smith, Gage & Dresser* (of Massachusetts) and *Harry T. Lord*,
for Long.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the Fidelity and
Deposit company.

WALKER, J. Though the original contract between the city and
the contractor did not expressly provide that the contractor should
pay for the labor employed and the materials used in the construction
of the buildings, which he agreed to build for the city, he and the
Fidelity and Deposit company, as surety in the bond which he gave
to the city to secure the faithful performance of his contract, agreed
to "pay for all labor performed or furnished and for all materials
used in the fulfillment of said contract." The contract and the bond
together constituted an entire agreement; and the supplemental
provision in the bond in regard to the payment of the labor and the
materials furnished is not to be rejected because it was not also
contained in the contract. It was clearly a provision upon which the
minds of the parties met and was designed to express their intention
that the payment for the labor and the materials, which the con-
tractor should use in the construction of the buildings and for which
the city was to pay him, should in turn be paid by him to the parties

entitled to it, or to the parties employed by him to do the necessary work and to furnish the necessary supplies. The language used is not vague, indefinite or ambiguous, and its meaning is not open to doubt. If, as is urged by the surety company, the intention was merely to promise that in case the city should avail itself of the provision in the contract to furnish labor and materials upon the failure of the contractor to perform the work satisfactorily the contractor should reimburse the city therefor, it is somewhat peculiar that the provision in the bond is not thus confined in its application; and moreover it would be an unnecessary provision since the city was authorized to deduct what it might expend on that account from the money that might be due the contractor. The reasonable construction of the clause in question is that if the contractor failed to pay a sub-contractor like the plaintiffs for work and materials furnished by them the security afforded by the surety company would be available for his benefit.

But it is contended that if such was the intention of the parties, the city had no power to enter into the contract which was for the sole benefit of strangers, who were not only not parties to it in a technical sense but furnished no consideration for the promise. As a further reason for this contention it is suggested that the city as a municipal corporation had no legal interest in the question whether the contractor paid the plaintiffs what he might be owing them on account of work and materials, or whether the latter should receive compensation from any other source. Whatever force there might be in these suggestions in an action at law, the facts do not warrant their application and adoption in this suit, which is a bill in equity governed by equitable principles. One evident purpose of the execution of the bond was to furnish security for the sub-contractors, whoever they might be. That they did not directly participate in the agreement is no reason why, having provided labor and materials for the construction of the buildings and having no lien thereon (Laws 1913, *c*. 93), they should have no remedy on the bond for their compensation in default of payment by the contractor. The security was furnished in part for their benefit. "If for technical reasons the law is powerless to enforce the duty, equity is subject to no such weakness." *Hunt* v. *Association*, 68 N. H. 305, 308; *Keene Five Cents Sav. Bank* v. *Herrick*, 62 N. H. 174; *Baker* v. *Bryan*, 64 Ia. 561, 566. "The proceeding is in equity and not at law. The facts that the plaintiff is in no way a party to the contract of indemnity, that he paid no part of the consideration, that the contract was one exclu-

sively between the Paper Company and the Insurance Company for the protection of the former, upon which reliance is placed, are not decisive in equity." *Sanders* v. *Insurance Co.*, 72 N. H. 485, 500; *Holt* v. *Bank*, 62 N. H. 551.

The further contention that the city had no power to enter into a contract which was intended to operate for the benefit of third parties, who sustained no relation of privity to it at law, and in whose undertaking the city was not legally interested and whom it was not legally liable to pay for their services, disregards what may be termed the incidental power of the city when exercising its undoubted right (as, for instance, its right to contract for the erection of municipal buildings), and its interest in having its proper work done in a proper way. It is not true that it had no substantial interest in having the work which was done by the plaintiffs well done, or that it was a matter of indifference to it whether the plaintiffs were amply secured by a bond in their favor. To secure the best results the obligation of the surety to the sub-contractors might seem to the city to be desirable, as an incident of its contract for the construction of the buildings. The payment of the premium to the surety was equivalent to the establishment of a trust fund in the hands of the surety for the benefit of the plaintiffs, if the contractor failed to pay them for their services. *Hunt* v. *Association, supra.* And for this reason, if for no other, the city had authority for its own protection and advantage to require the insertion in the bond of the clause in question.

The fallacy of the argument for the surety company appears in the assumption, that the obligee of the bond had no interest in the performance by the contractor of his duty to pay the sub-contractor for the labor he performed and the materials he furnished. If that assumption were justified upon the facts, it may be that the plaintiff would be regarded as a stranger to the contract, and hence for lack of privity would not be entitled to enforce the contract. But the city, as we have seen, was directly and legally interested in having the bond secure the payment by the contractor of what might become due for labor and materials furnished to him in the proper construction of the buildings. The city represented in this respect not only itself but the prospective sub-contractors, who having fully performed their agreement with the contractor are in equity authorized to maintain this suit to reach the fund established for their benefit at the request of the city. The surety company has no just ground to object that it is compelled to perform its agreement, upon a mere technicality which in fact does not exist. The right of the plaintiffs

to a decree in their favor is as clear as the right of the city to incorporate in the bond the clause in question. To hold otherwise would be to deny the power of the city to protect itself in the manner suggested. The intention of the parties was that the plaintiffs whoever they might be should have the right to enforce this provision of the bond, which was executed for the protection of the city and for the benefit of the plaintiffs; and no rule of law or equity requires the court to render that intention ineffectual or abortive. While the promise of the obligor, by which the surety company in effect established the fund, was technically to the city, the equitable beneficiaries were the parties who furnished the labor and materials, and as such they may maintain the action in their own name. *Lloyd's* v. *Harper,* 16 Ch. Div. 290, 309.

These views are amply sustained by the great weight of authority. In 2 Dill. Mun. Corp. (5th ed.) 1266 the following lucid statement renders further discussion of this subject unnecessary: "In the exercise *of its general power* to contract and without express statutory authority, a *city may require a contractor to give a bond* conditioned for the payment of such persons as *shall supply materials or furnish labor.* The exaction of this bond is within the ordinary administrative duties of the officers of the city, although there may be no statute expressly requiring it. By entering into the contract the city clothes the contractor with a certain degree of credit, and it is to its interest that those furnishing labor and material to the city should know that they are justified in relying upon the credit of the contractor. A reasonable certainty that materials and labor will be paid removes the temptation to furnish inferior work and materials which always exists when dealing with persons of uncertain credit. The bond therefore operates to protect the city and is for its interests. There is also a moral obligation which the city may recognize (although it is not bound to do so), that the city should so far as possible protect laborers and mechanics and see that they are not sufferers by the construction of the work. Laborers, mechanics, and materialmen are not permitted, in the absence of an express statutory provision, to file liens upon public property, and a bond conditioned for their payment is their only protection. Hence, *the weight of authority* is to the effect that a bond conditioned for their payment may be exacted *without express statutory authority* and that the person for whose benefit the bond is made, *i. e., the materialman,* mechanic, or subcontractor, *may maintain an action* upon it to recover any sums due them." Among the numerous authorities sustaining the above views

the following recent cases may be cited. *King* v. *Downey,* 24 Ind. App. 262; *Kaufmann* v. *Cooper,* 46 Neb. 644; *National Surety Co.* v. *Company,* 104 Miss. 626; *St. Louis* v. *Von Phul,* 133 Mo. 561; *Knapp* v. *Swaney,* 56 Mich. 345. It may be noted that in *Kansas City Pipe Co.* v. *Thompson,* 120 Mo. 218 the defendants' position was apparently sustained, but that case was subsequently overruled in *St. Louis* v. *Von Phul, supra. Smith* v. *Bowman,* 32 Utah 33, referred to by counsel for the surety company, not only does not sustain its contention but recognizes the principles above stated as of controlling importance in a case like the one at bar. Many cases are there cited sustaining our conclusion.

Offers were made at the trial by the plaintiffs to prove that at the time the bond was executed the city insisted upon the insertion of the clause in question, and by the defendants that the city did not insist upon it. Evidence of both offers were excluded subject to exceptions. In the construction of the clause it is not important whether the city did, or did not in fact insist upon its insertion. By accepting the bond it must be assumed that this clause expressed its desires and was agreeable to the surety company, who cannot dispute its validity. It furnished the necessary evidence of the contract as finally concluded. How the clause happened to be put into the bond, and whether it should be expunged or canceled are questions not now before the court. The mere fact that the city did not "insist" upon it, whatever that may mean, does not prove that it was inserted without its knowledge or approval, or that it did not intend the surety company should be bound by it. The proffered evidence was properly excluded.

The surety company also excepted to the admission of evidence that after the plaintiffs had performed a part of the work under their contract with the contractor they declined to proceed further on account of the financial condition of the latter, who thereupon informed them of the provisions of the bond, and that relying on that security they completed their contract. Upon the theory above indicated that the plaintiffs' rights are not dependent upon their actual participation in the making of the contract or knowledge of its existence at that time, the evidence would seem to be unimportant, except as showing they had performed the contract. Whether they were entitled to enforce the trust obligation of the surety company established for their benefit does not involve an inquiry as to the time when they learned of the trust or whether they performed the work in ignorance of its existence. Such matters are immaterial. As was said in *United States Gypsum Co.* v. *Gleason,* 35 Wis. 539, 546:

"Since, then, the bond here in question secures the persons who furnished materials used in the construction of the county's buildings, it follows that plaintiffs, who furnished material so used and for which the principal contractor has not paid, have the right to enforce payment under the bond by action directly against the bondsmen. This right is well established, though they had no knowledge of the promise when made or had not expressly assented thereto before bringing the action, and the right to enforce such contract for their benefit continues while the bond is in force." *Hunt* v. *Association, supra* (*p.* 307). The order is

                                        *Decree for the plaintiffs.*

All concurred.