UNITED STATES FIDELITY & GUARANTY COMPANY *vs.* RHODE ISLAND COVERING COMPANY *et als.*

JUNE 26, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

HAHN, J. This is a bill in equity in the nature of a bill of peace to prevent multiplicity of suits and to settle a controversy upon the question of the liability and rights of the various parties under a certain bond given by the respondent, Sarantos Anastos, doing business as the Dean Plumbing Company, to the respondent City of Providence, with the complainant, United States Fidelity & Guaranty Co., as surety thereon. The other respondents are the Industrial Trust Co., a creditor of Anastos which attached his funds in the hands of the City of Providence, and various subcontractors and materialmen who furnished labor and

materials used by Anastos under his contract with the said city. After hearing in the Superior Court and entry of final decree therein, the cause is before this court on the appeal of respondent Industrial Trust Co. on the ground that the decree is against the law and the evidence and that an interlocutory decree entered January 13, 1932, is against the law. Respondent Federal Steam & Gas Supply Co. also filed an appeal on the ground that the final decree—so far as it relates to the period of time for the computation of interest—is against the law and the weight of the evidence.

It appears from the evidence and admissions of fact set up in the bill of complaint that in December, 1929, Anastos entered into a contract with the City of Providence, hereinafter called the City, whereby he was to provide the entire system of plumbing, drainage and gas piping for the Hartford Avenue Junior High School for $59,374, and he furnished the City the bond above mentioned. On the date that the bond was executed—December 6, 1929—Anastos made an indemnity agreement with the complainant which provided: "That the said company as surety on said bond, as of this date, shall be subrogated to all our rights, privileges and properties, as principal and otherwise in said contract, and said principal does hereby assign, transfer and convey to said company all the deferred payments and retained percentages, and any and all monies and properties that may be due and payable to said principal at the time of such breach or default, or that may thereafter become due and payable to said principal on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that all such monies and the proceeds of such payments and properties shall be the sole property of said company, and to be by it credited upon any loss, damage, charge and expense sustained or incurred by it as above set forth in its bond of suretyship."

On January 17, 1930, while engaged in carrying out his contract with the City, Anastos borrowed $5,000 from the

Industrial Trust Company, hereinafter called the trust company. On this debt there is still due the sum of $4,000. The transcript of testimony shows that the money loaned to Anastos was not restricted to use under his contract with the City and could be used by him for any purpose that he saw fit. The contract was completed to the satisfaction of the City on June 2, 1931, and at that time, when the work was accepted, there was due Anastos from the City the sum of $12,234.80. At the time of the completion of the contract there were claims against Anastos, of various materialmen, amounting in the aggregate to $18,828.25.

By letter dated November 4, 1931, the complainant notified the City of the assignment contained in the indemnity agreement. On December 18, 1931, the trust company brought suit against Anastos and attached the funds retained by the City. The complainant offered to pay all the materialmen in full, provided, on so doing, it could without litigation obtain the entire amount held by the City. The trust company, however, notified the complainant that, if the latter paid the materialmen, the trust company would contend that the complainant had paid said sums voluntarily and without being legally bound to pay them, and that therefore the complainant would not be entitled to receive any part of the money held by the City. The trust company also notified the complainant that if complainant was legally bound to pay said materialmen it was equally bound to pay the trust company the sum due it from Anastos. The subcontractors and materialmen threatened to bring proceedings against the complainant and the complainant brought this bill in equity against all the respondents to have the rights of the various parties adjudicated.

After the hearing upon the prayer for a preliminary injunction, a decree was entered in which the respondent subcontractors and materialmen were enjoined from bringing any actions at law or suits in equity against the complainant; the attachment was vacated and the respondent

City was ordered to pay into the registry of the court the sum due Anastos under the contract, such payment to be without prejudice to any rights that the respondent trust company might have obtained by its attachment. The decree further provided that, upon such payment into said registry, the bill of complaint be dismissed as to the City of Providence.

Following the hearing on the merits a final decree was entered requiring the complainant to pay to the respondent subcontractors their respective claims, together with interest to October 16, 1931, the date on which said complainant made offer of payment. It was further decreed that the respondent trust company was not entitled to recover from the complainant any sums loaned to Anastos, and that the complainant was entitled to the money deposited in the registry of the court, after it had paid to said subcontractors and materialmen the claims aforesaid.

The primary question raised by the appeal of the trust company is whether the complainant, as surety on Anastos' bond to the City, is liable thereunder to the respondent subcontractors for the payment of their respective unpaid claims for labor and materials furnished to and used by Anastos in carrying out his contract with the City. The complainant has not seriously questioned its liability to the materialmen under the bond. It offered to pay them in full, provided it would thereby without litigation obtain the funds withheld by the City; and it has not appealed from the decree requiring it to pay the materialmen.

The contract between the City and Anastos required the City to make payment, upon Anastos "well and faithfully performing said contract in all its parts, and satisfying said city that no liens or other claims for labor done or materials furnished in the aforesaid work exist." The fact that the provisions of the lien law might not be available to subcontractors and materialmen as against the municipality was a valid reason for the City to require that the rights of such persons should be protected by bonding the general

contractor since thereby the City was assured that no person would be restrained from furnishing labor and materials of the best quality for use in city contracts. See 2 Dillon, Munic. Corps. (5th ed.) 1266.

The bond itself specifically provided: "if said Sarantos Anastos shall well and truly keep and perform all the terms and conditions and guarantees of the said contract on his part to be kept and performed, and shall indemnify and save harmless the said City of Providence, as therein stipulated, and shall also pay for all labor performed or furnished and for all materials used in the carrying out of said contract, then this obligation to be void, otherwise to be and remain in full force and effect." This language is clear and unambiguous. The bond was undoubtedly intended to operate for the benefit of such persons as should furnish labor or materials for the erection of the school building.

By the weight of the authorities in the United States, such a surety contract or bond imposes on the surety the obligation of paying materialmen and subcontractors. *Toner & Co.* v. *Long*, 111 Atl. 311; *Fidelity & Deposit Co.* v. *Rainer*, 220 Ala. 262; *Hipwell* v. *Nat'l Surety Co.*, 105 N. W. 318; 77 A. L. R. 13–221; Yale Law Journal, Vol. 38, p. 1.

The claim of the trust company that since this is a contract under seal the court should apply the rule of *Woonsocket Rubber Co.* v. *Banigan*, 21 R. I. 146—wherein it was decided that a person not a party to a contract under seal could not sue upon it—is not well founded. The complainant is here seeking in equity to ascertain its liability under the terms of the instrument. The respondent materialmen have not instituted the litigation but are each made a party. Their rights are submitted to the protection of the court, and the method of enforcing the liability of the complainant surety is not here involved.

The contention of the trust company, that during the performance of their contracts with Anastos the subcon-

tractors had no knowledge of the terms and conditions of the bond and that they did not pay any consideration for the bond, is not material. The subcontractors have acceded to the promise made for their benefit thereunder by making claim against the surety under the terms of the bond in these proceedings, and this court has frequently upheld the right of a third person to enforce a promise made by one person to another for the benefit of said third person, after he accedes to the promise, although the consideration did not move from such third person and although he was not cognizant of the promise when it was made. *Blake* v. *Atl. Nat'l Bank*, 33 R. I. 464 and cases cited; *Waterhouse* v. *Waterhouse*, 29 R. I. 485.

It is urged by the trust company that if the complainant is liable as surety to the materialmen, it is likewise liable under the bond to pay to said respondent so much of the money loaned by it as was used to pay for labor and materials.

The language of the bond above quoted does not permit such a construction. It is the generally recognized rule that a bank loaning money is not entitled to recover from the surety on the bond of a building contractor providing for payment for labor and materials. *U. S.* v. *Rundle*, 107 Fed. 227; *So. Surety Co.* v. *Holden Land & Lumber Co.*, 14 Fed. (2nd) 411; *Aetna Trust & Savgs. Co.* v. *Nackenhorst*, 122 N. E. (Ind.) 421; *First Nat'l Bank of Eufaula* v. *So. Surety Co.*, 61 Okla. 308; *Lion Bonding & Surety Co.* v. *First State Bank*, 194 S. W. (Tex.) 1012; 44 C. J. 359. This principle is very clearly laid down in the case of *Lion Bonding & Surety Co.*, *supra;* "As a mere lender of money the bank cannot claim to be a materialman; neither can it claim by subrogation the rights of materialmen solely upon the ground that the money loaned was used to pay those claims."

In its brief the respondent bank urges that if the complainant is liable on its bond to pay in full the claims of the materialmen and not to pay the claim of the bank, the bank

has a claim to the fund paid into court by the respondent city prior to any claim that might be made to said funds by the complainant. This argument is untenable. The complainant, being liable to the subcontractors on its bond, is entitled to all the balance of the contract money held back by the City from respondent Anastos and now deposited in the registry of the Superior Court, not only by virtue of its assignment and right of subrogation expressly contained in the indemnity agreement of December 6, 1929, of which the City had notice on November 4, 1931, prior to the attachment by the bank on December 18, 1931, but also on the ordinary equitable doctrine of subrogation. A surety which has to pay out money as surety on a building contractor's bond is entitled to be subrogated to the rights of the contractor in any balance due him, and this right of subrogation relates back to the date of the original contract which is superior to all claims for money voluntarily loaned to the contractors. *Prairie State Bank* v. *U. S.*, 164 U. S. 227; *Henningsen* v. *U. S. Fidelity & Guaranty Co.*, 208 U. S. 404; *Farmers' Bank* v. *Hayes*, 58 Fed. (2nd ed.) 34; 60 C. J. 778. In the case of *Farmers' Bank* v. *Hayes, supra,* the court, at p. 37, said: "the equitable rights of the surety become fixed as of the date of the bond and are superior to those of any holder of an after acquired lien." .

In considering the rights of those who furnished labor and materials as against the attaching creditor, it is clear that, under the terms of the contract between the City and Anastos, until payment by Anastos of all bills for labor and materials the City would have been in possession of no funds of the contractor subject to garnishment, as the contract was not completed until the work was done and said payments made. Through the contract of suretyship between the complainant and the City and through the assignment to the complainant by Anastos of any balance remaining unpaid after the completion of the contract, it is apparent that the complainant, in guaranteeing performance of the contract, was required to pay the labor and

materialmen so far as the funds of Anastos would enable it so to do, and any amount in excess thereof was to be paid by complainant out of its own funds. As the bond was to secure the performance of the contract of Anastos in its entirety, complainant assumed the full performance thereof and if the funds payable to Anastos were insufficient for such completion, complainant was under the duty of completing such performance from its own funds, under the contract of suretyship. To allow the attachment of any of the funds payable to Anastos and necessary for the completion of the contract would in effect take from the complainant funds which under its contract it had intended to use in the completion of the contract insured. The agreement of a surety company to guarantee performance of a contract must be based upon the estimated cost of labor and materials in conjunction with the agreed price to be paid to the contractor. To compel an insurer to pay more than is required for the completion of the contract insured, because—through attachment or otherwise—the funds payable to the contractor are diminished, would render it impossible for a surety company to make any definite estimate of the liability assumed by it to execute a contractor's bond.

The complainant occupies the same position as the City in regard to the funds paid into court through the assignment of these funds by Anastos to complainant, as a prerequisite to its assuming liability on the bond. The money paid into court is to be used to fulfil the contract between Anastos and the City, which means that it should be used to pay those entitled to payment under the terms of the contract between Anastos and the City. This cannot be done unless such funds are free from the attachment of the trust company. There was no error in the decree of the court below denying the claim of the trust company to any portion of said fund.

The appeal of the respondent Federal Steam & Gas Supply Co. on the question of interest is without merit.

The court below awarded interest from June 2, 1931—the date on which the work under the contract was accepted by the City of Providence—to October 16, 1931— the date on which the complainant offered to pay the respondent subcontractors. Failure of the complainant to make payments subsequent to the latter date was occasioned entirely by the conflicting claims of the parties to this cause. The situation is very much the same as in a bill of interpleader where the complainant cannot be charged with interest after it has expressed its willingness to pay the one legally entitled to the funds. The rule in such cases is stated in 15 R. C. L. 34, as follows: "Thus the complainant in a bill of interpleader cannot be charged interest when the defendants claim the fund and it is withheld at the request of one of the defendants, and the complainant is not guilty of negligence causing the delay in payment."

The appeals of the respondents Industrial Trust Company and Federal Steam & Gas Supply Co. are hereby denied and dismissed, the decree of the Superior Court is affirmed and the cause is remanded to said court for further proceedings.

*Gardner, Moss & Haslam, William W. Moss, Harry A. Tuell,* for complainant.

*Comstock & Canning, Andrew P. Quinn,* for Industrial Trust Co.

*Russell W. Richmond,* for Allen & Reed, Inc.

*Hartigan, Mullen & Roberts, John E. Mullen,* for Federal Steam & Gas Supply Co.

*Thomas J. Flynn,* for Pignat-Vincenzi Mosaic Co. Inc.

*Conaty & Coen,* for Providence Steam Trap Co.

*George J. Sheehan,* for Tucker Construction Co. Inc.

*Samuel Workman,* for Rhode Island Covering Co.

*Harry A. Tuell,* for R. I. Nickel Plating Co.

*Greenough, Lyman & Cross, Richard E. Lyman, amici curiae.*