GEORGE S. FOSTER, TREASURER OF THE STATE OF MAINE

*vs.*

KERR AND HOUSTON, INC., AND

STANDARD SURETY AND CASUALTY COMPANY OF NEW YORK.

Kennebec.     Opinion, May 3, 1935.

*Verrill, Hale, Booth & Ives,*
*Clyde R. Chapman,* Attorney General, for the plaintiff.
*Cook, Hutchinson, Pierce & Connell,*
*Skillin, Dyer & Payson,*
*J. W. Hill,* for the defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

BARNES, J.   This is an action of debt brought by George S. Foster, Treasurer of the State of Maine, against the Standard Surety and Casualty Company of New York, and comes forward on report, with an agreed statement of facts.

It is founded on a surety bond on which Kerr and Houston, Inc., appears as principal, the defendant as surety, and the plaintiff as obligee, and is brought in the name of the obligee for the benefit, or to the use of the American Bridge Company, Charles R. Bailey and the Augusta Lumber Company, as to each of whom it is admitted that he furnished labor or materials, or both, to the contractor, for use in construction of a highway bridge, and for the same has not been fully paid.

Kerr and Houston, Inc., the principal contractor, was originally joined as a defendant, but the action was dismissed as to it on account of bankruptcy.

It is agreed by the parties that, if the defendant surety company is found liable, damages on the claim of the American Bridge Company shall be assessed at $17,955.68, with interest from such date as the court shall determine the same is recoverable; on the claim of Charles R. Bailey at $648.00, with interest as above; and in the claim of Augusta Lumber Company, if this court finds liability, judgment is to be assessed in the court below with interest from such date as this court shall fix, the case to be remanded to the Superior Court for the purpose of assessing damages.

On July 17, 1931, the State entered into a written contract with

Kerr & Houston, Inc., a Maine corporation, for the construction of the Wiscasset and Edgcomb highway bridge.

The bond, executed two days later, contained the following provisions: "The condition of this obligation is such that if the said Principal, Kerr & Houston, Inc., shall faithfully perform the contract entered into between said State of Maine and said Principal on the 19th day of June, A.D. 1931, for the construction and completion of the bridge structure . . . on its part and satisfy all claims and demands incurred for same and shall pay all bills for labor, material, equipment, and for all other things contracted for or used by it in connection with the work contemplated by the contract, and shall fully reimburse the obligee for all outlay and expense which the obligee may incur in making good any default of said principal, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

It must be conceded that the surety, guaranteeing that its principal would "faithfully perform the contract entered into between said State of Maine and said Principal," had fully informed itself of the provisions and conditions of the contract, faithful performance of which is guaranteed.

The contract, by certain definitions and provisions here quoted, gave definite information as to the obligations of both contractor and surety.

Most important are the following:

"SURETY. The corporate body, individual, or body of individuals bound with and for the Contractor, who is previously liable, which corporate body, individual, or body of individuals engages to be responsible for his payment of all debts pertaining to and for his acceptable performance of the work for which he has contracted."

"CONTRACT BOND. The approved form of security furnished by the Contractor and his Surety as a guarantee of good faith on the part of the Contractor to execute the work in accordance with the terms of the Contract."

"REQUIREMENTS OF CONTRACT BOND. The successful Bidder, at the time of the execution of the contract, must furnish a bond payable to the Treasurer of State of Maine, or his successors in office, in the sum of seventy-five (75) per cent of the amount of

the contract awarded. The form of bond shall be that provided by the Commission and the Surety shall be acceptable to the Commission. This bond shall guarantee due execution and faithful performance and completion of the work to be done under the contract, and the payment in full of all bills and accounts for material and labor used in the work, and for all other things contracted for or used in connection with the contract."

"RESPONSIBILITY FOR DAMAGE CLAIMS. The Contractor shall assume the defense of, and indemnify and save harmless the State and the Commission and their officers and agents from all claims, suits or actions of any character, name and description on account of injuries to any person, persons, property, firm or corporation, received or sustained by reason of any act of the Contractor or his employees or resulting from the prosecution of the works, or any of its operations, or caused by reason of the existence or location or condition of the works or of any materials, plant or machinery used thereon or therein, or which may have been produced by reason of any failure, neglect or omission on the part of the Contractor or any of his agents, servants or employees who shall be engaged in any capacity in or about the work to be performed under this contract.

"The Contractor shall promptly pay all bills for labor, materials, machinery, board of workmen, water, tools, equipment, teams, trucks, automobiles, freight, fuel, light and power and for all other things, contracted for or used by him on account of the work herein contemplated, and if at any time during the progress of the work or before final payment of any money due the Contractor under the terms of this contract, any claim for labor, materials, board of workmen, water, tools, equipment, teams, trucks, automobiles, freight, fuel, light and power, or for any other things specified as aforesaid, or for damages by reason of any acts, omissions or neglect of said Contractor in the prosecution of the work, shall be presented to said Commission, the Commission may retain such sum or sums from the moneys due the Contractor under this contract as would be necessary to discharge all such claims whether for labor or materials or for damages as aforesaid."

In the construction of highway bridges, it is, and has been continuously since enactment of Chapter 202, Public Laws of 1909,

now R. S., Chapter 27, Section 117, the public policy of this State that performance of all contracts shall be secured by bond.

By provision of statute, Chapter 28, Section 64, R. S., the state highway commission "shall have full power in all matters relating to the furnishing of bonds by the successful bidders for the completion of their work and fulfilling of their contracts. These bonds shall protect fully the state, county and town from all liability arising from damage or injury to persons or property as a result of the contractor's operations."

The bond herein is a statutory bond. But it is argued by defendant that because their claims are not specifically mentioned in the bond, materialmen and laborers are not protected under it.

And further that the inclusion in a bridge contractor's bond of a requirement to protect materialmen and laborers would not furnish protection because there is no statute authorizing such requirement.

Decision on the force and meaning of the contract and bond, in these particulars, and the date when interest, if any, begins to run is the burden on the court.

The intent of the parties to the bond must be determined from expressions therein, inevitable implications, and conclusions of law.

Unless the language of specifications of performance required of the contractor is to be disregarded as mere surplusage, contract and bond are indissolubly tied together.

Before any bond was drafted the contract of construction was drawn up, expressing what the State, through the agency of the highway commission, would require of the contractor, and hence what the surety would bind himself to secure.

The statute does not prescribe the form of construction contracts. It does make the requirement of a bond mandatory, and contains nothing to negative in its agent the power to provide such other safeguards as may be deemed proper in the protection of all parties connected with the construction.

It gives, as above quoted, full powers in all matters relating to the furnishing of bonds.

The condition of the bond that the principal shall faithfully perform the contract is very general. It does not stand alone, but incorporates the contract in the bond.

In the orderly course of business, before the bond was drafted, the contract was drawn up, expressing what the state, through the agency of the highway commission, would require of the contractor, and hence what the surety must be held to have bound himself to secure.

It is not claimed that the surety did not know the requirements of the contract, and we find in this case the same requirements in both contract and bond.

This court has never before had to construe an exactly similar contract.

But the rights and obligations of contractors on public works in most states of the union have been discussed in opinions interpreting similar agreements.

First it may be said that a bonding company, agreeing for a consideration is a surety, and that its guaranty is not to be interpreted under the rule *strictissimi juris*. We quote with approval the following: "The law of suretyship has undergone a considerable change in late years. The day of personal suretyship is fast slipping away, and in its stead comes the corporate surety for profit. Formerly, a surety was an individual, or collection of individuals, actuated by beneficent motives to carry the burden of suretyship, receiving no profit or benefit, and in consequence thereof, the law dealt tenderly with him or them. But, in this day and age of corporate sureties, the burden is lightened by the payment of adequate premiums, and their final liabilities are ofttimes secured by counter indemnity. As a result of this new condition of affairs the trend of all modern decisions, federal and state, in the construction of the law appertaining to sureties is to distinguish between individual and corporate suretyship, where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. In the one case, the rule of *strictissimi juris* prevails, as it always has, that is, the contract of an individual surety, or a 'voluntary surety' as he is spoken of in some cases, will be strictly construed and all doubts and technicalities resolved in favor of the surety, such person being regarded as a favorite of the law. But in the other case, because it is essentially an insurance against risk, underwritten for a money consideration by a corporation adopting such business for its own profit, the

contract will be construed most strongly against the surety and in favor of the indemnity which the obligee has reasonable grounds to expect." 21 R. C. L., P. 1160, Sec. 200.

What the contractor has agreed to perform is what the bond assures.

The language of contract and bond before us is plain. In simple words the contractor agreed to pay all bills for labor and materials, used on the work, and the surety guaranteed complete and faithful performance by the principal, and that it would "pay all bills for labor, material, equipment, and for all other things contracted for or used by it in connection with" the bridge construction.

It is agreed that the State is protected.

Has a laborer or materialman, when collection of a just claim can not be had of the contractor, the right to sue the surety; can the State, by its treasurer, sue for the use of such laborer or materialman? That is the first issue. It is argued that there is a disagreement of authorities on this question.

The very decided weight of authority answers in the affirmative. In two jurisdictions of New England, in *Byram Lumber & Supply Co.* v. *Page et al,* 109 Conn., 256, 146 A., 293, where one condition of the bond was the promise: "and shall pay all persons who have contracts directly with the principal for labor or materials"; in *United States Fidelity & Guaranty Co.* v. *Rhode Island Covering Company* (Rhode Island, 1933), 167 A., 143, "and shall also pay for all labor performed or furnished and for all materials used in the carrying out of said contract," it is held that those who furnish labor or materials may sue the surety when they can not collect of the principal contractor.

From another New England court we read: "Though the original contract between the city and the contractor did not expressly provide that the contractor should pay for the labor employed and the materials used in the construction of the buildings, which he agreed to build for the city, he and the Fidelity and Deposit Company, as surety in the bond which he gave to the city to secure the faithful performance of his contract, agreed to 'pay for all labor performed or furnished and for all materials used in the fulfillment of said contract.' The contract and the bond together constituted

*o*

an entire agreement; and the supplemental provision in the bond in regard to the payment of the labor and the materials furnished is not to be rejected because it was not also contained in the contract. It was clearly a provision upon which the minds of the parties met and was designed to express their intention that the payment for the labor and the materials, which the contractor should use in the construction of the buildings and for which the city was to pay him, should in turn be paid by him to the parties entitled to it, or to the parties employed by him to do the necessary work and to furnish the necessary supplies. . . . The reasonable construction of the clause in question is that if the contractor failed to pay a sub-contractor like the plaintiffs for work and materials furnished by them the security afforded by the surety company would be available for his benefit. . . . The further contention that the city had no power to enter into a contract which was intended to operate for the benefit of third parties, who sustained no relation or privity to it at law, and in whose undertaking the city was not legally interested and whom it was not legally liable to pay for their services, disregards what may be termed the incidental power of the city when exercising its undoubted right (as, for instance, its right to contract for the erection of municipal buildings), and its interest in having its proper work done in a proper way. It is not true that it had no substantial interest in having the work which was done by the plaintiffs well done, or that it was a matter of indifference to it whether the plaintiffs were amply secured by a bond in their favor. To secure the best results the obligation of the surety to the sub-contractors might seem to the city to be desirable, as an incident of its contract for the construction of the buildings. The payment of the premium to the surety was equivalent to the establishment of a trust fund in the hands of the surety for the benefit of the plaintiffs, if the contractor failed to pay them for their services. *Hunt* v. *Association,* 68 N. H., 305, 308, 38 A., 145. And for this reason, if for no other, the city had authority for its own protection and advantage to require the insertion in the bond of the clause in question." *William H. Toner & Co.* v. *Long et al.,* 79 N. H., 458, 111 A., 311.

To a like conclusion are *Union Indemnity Co.* v. *State, to use of McQueen Smith Farming Co.,* 217 Ala., 35, 114 So., 415; *Leslie*

*Lumber & Supply Co.* v. *Lawrence et al.*, 178 Ark., 573, 11 S. W. (2nd), 458; *French* v. *Farmer et al.*, 178 Cal., 218, 172 Pac., 1102, citing decisions in Nebraska, Missouri, Iowa and Indiana; *People, to use of Colorado Fuel & Iron Co.* v. *Dodge et al.*, 11 Colo. App., 177, 52 Pac., 637; *Board of Education, to use of Chandler Lumber Co.* v. *Aetna Indemnity Co.*, 159 Ill. App., 319; *Road Supply & Metal Co.* v. *Kansas Casualty & Surety Co.*, 121 Kan., 299, 246 Pac., 503; *Blair & Franse Construction Co. et al* v. *Allen*, 251 Ky., 366, 65 S. W. (2nd), 78; *Am. Fidelity Co. of Montpelier* v. *State, to use of Short & Walls Lumber Co.*, 128 Md., 50, 97 A., 12; *Knapp* v. *Swaney*, 56 Mich., 345, 23 N. W., 162; *Lanstrum* v. *Zumwalt*, 73 Mont., 502, 237 Pac., 205; *Southwestern Portland Cement Co.* v. *Williams et als.*, 32 N. M., 251 Pac., 380, 49 A. L. R., 525; *Johnson Service Co., Inc.,* v. *E. H. Monin, Inc. et al*, 253 N. Y., 417, 171 N. E., 692, removing from a case such as this at bar the inhibition of the *Fosmire Case*, 229 N. Y., 44, 127 N. E., 472; *Royal Indemnity Co.* v. *Northern Granite Co.*, 100 Ohio St., 373, 126 N. E., 405; *Mack Mfg. Co.* v. *Mass. Bonding and Insurance Co.*, 103 S. C., 55, 87 S. E., 439; *Molony & Carter Co.* v. *Pennell & Harley, Inc.*, 169 S. C., 462, 169 S. E., 283; *Fire Brick Co.* v. *National Surety Co.*, 42 S. D., 190, 173 N. W., 448; *Mosher Mfg. Co.* v. *Equitable Surety Co.* (Texas, 1921) 229 S. W., 318; *Aetna Casualty Co.* v. *Earle-Lansdell Co.*, 142 Va., 435, 130 S. E., 235; *Forsyth* v. *N. Y. Ind. Co.*, 159 Wash., 318, 293 Pac., 284; *State ex rel. Sand & Gravel Co.* v. *Royal Indemnity Co.*, 99 W. Va., 277, 128 S. E., 439; *Conner Co.* v. *Aetna Indemnity Co.*, 136 Wis., 13, 115 N. W., 811; *U. S. Gypsum Co.* v. *Gleason*, 135 Wis., 539, 116 N. W., 238, 17 L. R. A. (N. S.), 906.

On this point, Williston, in 15 Harvard Law Review, page 783, says:

"It is a common stipulation in a building contract that the contractor will pay all bills for labor and materials. In most cases the fulfillment of this promise by the contractor operates to discharge a liability of the owner of the building, whose building would be liable to satisfy the lien given by the law to workmen and materialmen. It can not, therefore, be inferred that the promisee requires the promise in order to benefit such

creditors of the contractor. The natural inference is that his object is to protect himself or his building. When, however, the owner of the building is a municipality, or county, or state, such an inference can not so readily be justified, for the law gives no liens against the buildings of such owners. In such cases if the stipulation can be regarded as the result of more than the accidental insertion of a provision common in building contracts without reflection as to its necessity, it must be supposed that the object was to benefit creditors of the contractor."

In the case at bar, the language of contract and bond is clear and unambiguous, and we hold, in accord with the weight of authority, as cited above, that the bond must be interpreted as intended to operate for the benefit of persons who furnished labor or materials for the erection of the bridge, and that such contract and bond impose on the surety the obligation to pay laborers and materialmen.

Do the statutes pertinent to bridge construction give the highway commission authority to require and to execute a bond such as was executed in the case at bar?

The highway commission is a state agency, exercising great and extensive powers in the construction and maintenance of a system of highways, for which purposes large funds are raised by bond issues and otherwise to be expended under the direction and supervision of the commission.

Its authority is outlined in Sec. 64 of Chap. 28, R. S., and extends to preparation of "all engineering plans and specifications for materials, construction, and workmanship which it considers necessary." It calls for and receives all bids for construction: may reject any or all bids: may contract with a town for construction of a bridge within the municipality, and may, with the approval of the governor and council, provide for the construction of a bridge by contract or on a day labor basis, without advertising for bids.

The bond not only guarantees faithful performance, but payment of all bills for labor, material, equipment, and for all other things contracted for or used in the work.

This is but repetition in the bond of requirements which the

commission incorporated in the contract, and we have no doubt that the highway commission had, by statute, and from the necessities of the case the authority to require such a bond, binding principal and surety to payment of proper bills for materials and labor.

In a similar case where a state board, without specific authority to do so, wrote a provision into the contract to secure to subcontractors their pay, the court said: "It is true the act does not contain any provision specifically directing or authorizing the board of sinking fund commissioners to incorporate either in the contract or bond a provision to the effect that the general contractor would pay the laborers and materialmen. The board of sinking fund commissioners, however, was given authority to contract for the erection of the capitol. Having been given authority to make such contract, it necessarily had the right to insert in the same any reasonable covenants which the members of the board might in their wisdom deem necessary or proper in order to secure the erection of the capitol on the best terms possible. Indeed, it was their duty to do what ordinarily prudent men would do in attending to their own business of a similar nature. If, then, the members of the board, in the exercise of the discretion conferred upon them, concluded that the work would be prosecuted with more satisfaction and would be better done by securing subcontractors, they were certainly authorized to insert in the contract or bond provisions necessary to attain the end desired. Indeed, the provision in regard to the payment of laborers and materialmen was a wise one. That subcontractors, knowing they were secure, would do better work and furnish better material than if they felt uneasy about their pay, cannot be doubted; and the credit which the contractor would thus gain by the security would enable him to prosecute the work more rapidly and with greater hope of profit." *Federal Union Surety Co.* v. *Commonwealth for use of Vandiver*, 139 Ky., 92, 129 S. W., 335.

In accord with the above, see text and authorities cited, 22 R. C. L., p. 628, Sec. 29; 29 C. J., p. 611, Sec. 350; 2 *Dillon Municipal Corporations* (5th Ed.), 1266; *Union Indemnity Co.* v. *State*, supra; *Knapp* v. *Swaney*, supra; *Lyman* v. *Lincoln*, 38 Neb., 794, 57 N. W., 531; *Town of Gastonia* v. *Engineering Co.*,

131 N. C., 363, 42 S. E., 858; *Aetna* v. *Earle-Lansdell Co.*, supra; *U. S. Gypsum Co.* v. *Gleason*, supra.

As provided in the certificate of report, the recovery of interest is inevitable, this court being required to declare the time when interest shall begin to run.

Courts have differed in determining the beginning of the interest period.

One rule, followed by many courts, is that beyond the penalty of a bond there can be no recovery against sureties so far as the principal of the claim is concerned, but interest may be allowed on the amount of the penalty from the date of the breach, when the claim upon the principal at that time exceeds or equals that amount, as the whole amount of the penalty is then a debt demandable of them.

Under this rule, when the bond is breached the penalty to the amount of the damages immediately becomes the debt of the surety and bears interest, the same as any other debt on contract, if the principal claim bears interest. *Burchfield et al.* v. *Haffey*, 34 Kan., 42, 7 Pac., 548; *Bank* v. *Smith*, 12 Allen, 243, 253; *Robbins* v. *Long*, 16 N. J. Eq., 59; *Brainard* v. *Jones*, 18 N. Y., 35; *Harris* v. *Clap*, 1 Mass., 308, 317 (1805), 2 Am. Dec., 27; *Montepelier* v. *National Surety Co.*, 97 Vt., 111, 123, 122 A., 484 (1923) and cases and texts there cited.

On this branch of the case we have precedents in decisions of this court.

"Strictly speaking, guarantors, indorsers and co-obligors or co-promisors, are all sureties for others who are the principals; but still, in common parlance, the word surety is used in a more limited sense, to mean a co-obligor or co-promisor, entering into a contract with the principal jointly, or jointly and severally, and at the same time." *Read* v. *Cutts*, 7 Me., 186.

"But what is the penalty in a bond for the payment of damages? It is the amount which the obligors agree to pay, if the whole penalty be needed for the purpose, for the damages sustained by the obligee by a breach of the bond, the amount to be paid as soon as the breach occurs. The obligee is to have the penalty at a particular and definite time. Immediately upon a breach of the bond the penalty is due to him. If he gets it then, he gets what the con-

tract provides; if he gets it later, he gets less than what the contract provides. If, then, the penalty be paid after the breach, interest should be added for the detention of the penalty, to make it equivalent to a payment at the date of the breach.

After the penalty is forfeited, it becomes a debt due. The sureties then stand in the relation of principals to the obligee, owing him so much money then due. To ascertain the precise sum may require calculation, but that is certain which can be made certain. The rule, common to contracts generally, applies, that where money is due and there is a default in payment interest is to be added as damages. The defendants should pay damages for detaining the damages which they bound themselves to pay at a prior date. The penalty of the bond is payable because the principal did not fulfill his obligation; the interest is the penalty upon the sureties for not fulfilling theirs." *Wyman* v. *Robinson*, 73 Me., 384, 387, 40 Am. Rep., 360.

"As the damages awarded exceed the penalty of the bond, the plaintiff is entitled to recover the amount of the penalty with interest thereon as damages for the detention from the date of the breach of the bond." *Pennell* v. *Card*, 96 Me., 392, 396, 52 A., 801.

As to notice of breach, or demand of payment, none need be proved. *Read* v. *Cutts*, supra; *M. C. Railroad Co.* v. *National Surety Co.*, 113 Me., 465, 470, 94 A., 929.

Interest is recoverable on each claim from the date the bills were due from the contractor; according to the agreed statement, in case of American Bridge Company from August 10, 1932; by the other claimants, from due date as found by the Court below.

The case is remanded to the lower court to be disposed of in accordance with this opinion.

*So ordered.*