FRANK S. CARPENTER, TREASURER OF THE STATE OF MAINE
*vs.*
MASSACHUSETTS BONDING & INSURANCE CO., ET AL.

Cumberland.    Opinion, January 7, 1965.

*Linnell, Perkins, Thompson, Hinckley & Thaxter*
  By: *Franklin G. Hinckley and*
    *Charles P. Barnes II,* for Plaintiff.

*Verrill, Dana, Walker, Philbrick & Whitehouse*
  By: *Roger A. Putnam and Loyall F. Sewall,*
                                      for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

MARDEN, J. On appeal from a denial by the Superior Court, upon motion, to reject a referee's report awarding plaintiff damages.

A contract for the construction of the so-called State Office Building was executed by the State and one Rugo as prime contractor. A sub-contract for certain of the interior work was executed between Rugo and Sherman Plastering Corp. (Sherman). By the terms of the prime contract Rugo furnished a performance bond with the three defendant corporate sureties[1], hereinafter referred to as "defendant," running to the Treasurer of the State of Maine and conditioned upon his faithful performance of the contract and, later, conditioned upon satisfaction of all bills for labor, material and equipment contracted for or used by him. From controversies arising out of the sub-contract Sherman brought an action of debt on the bond, under our pre-rule practice in the name of the State Treasurer, to recover amounts alleged to be due him. The prime contractor, Rugo, is not a party defendant.

---

[1] Massachusetts Bonding & Insurance Company; United States Fidelity & Guaranty Company and American Automobile Insurance Company.

Sherman's claims are of two categories:

(a) For a balance due upon his sub-contract, in the amount of $37,041.05.

(b) For work and material supplied as "extras" to his sub-contract, in the amount of $16,531.01.

To these claims totalling $53,572.06, defendant pleaded multiple defenses, including failure of Sherman to comply with his contract, denial of authority from Rugo within the prime contract terms to perform some of the alleged extra work and denial of obligation by Rugo on the remaining items.

By agreement the matter was heard by a member of the Superior Court, as a referee, with right of appeal reserved, whose report favored Sherman as to the balance allegedly due under the sub-contract in the amount demanded.

$37,041.05

Extra No. 1:

Change in finish of certain interior columns, $9,540.00, which amount had been paid except for the 10% retained. $ 954.00

Extra No. 4:

Removal of rubbish without chute. $ 1,948.10

$39,943.15

Claims for the other extras were denied.

The referee also awarded interest upon the total award from November 20, 1956.

During trial the defendant offered evidence of charges which the prime contractor, Rugo, had against Sherman. Over objection defendant was allowed to introduce evidence *de bene* of such of these charges as were related

to performance by Sherman of his sub-contract, but excluded evidence bearing upon non-performance-related claims. Ultimately the referee refused to consider as relevant any evidence of counter-claims by Rugo based upon the Rugo-Sherman contract.

To the acceptance of the referee's report defendant's points of appeal challenge the validity of:

(1) The refusal of the referee to consider "back charges" of Rugo against Sherman;

(2) permitting Sherman to recover upon a bond not in existence at the time the prime contract was executed;

(3) finding that any breach of the contract by Sherman was immaterial;

(4) finding that failure by Sherman to request arbitration was not a bar to his complaint;

(5) finding that Sherman had insurance coverage as required by the prime contract;

(6) allowing so-called extras to Sherman which were not authorized in writing in accordance with the prime contract;

(7) allowing Sherman Extra No. 1 (finish of interior columns);

(8) allowing Sherman Extra No. 4 (work occasioned by absence of rubbish chute);

(9) finding defendants jointly and severally liable;

(10) ordering execution in the amount of his findings, and

(11) allowing interest from November 20, 1956.

These points of appeal will be considered in order.

## Point 1.  *Back-Charges*

This proceeding seeks to enforce defendant's guarantee.  The prime contractor is not a party.  Defendant evidenced no assignment to him of Rugo claims against Sherman.  The referee held that *Rumery Co.* v. *Merrill Trust Co., et al.*, 127 Me. 298; 143 A. 54 controls this phase of the issue.  We agree, and excluding consideration of Rugo's alleged set-off charges was not error.

## Point 2.  *Bond*

Within the "Instruction to Bidders" on the prime contract, which was executed June 9, 1954, the contents of which were a part of the contract, the successful bidder was obligated to deliver to owner an executed bond in the amount of 100% of the accepted bid "as surety for the faithful performance of his contract and for payment of all persons performing labor or furnishing materials in connection therewith."  (Plaintiff's Exhibit #1, Page 5.) Rugo seasonably furnished a bond for "faithful performance" but the additional condition covering "payment of all persons" was omitted.  Although the prime contract was by reference made a part of the bond, after the work on the building was substantially completed the absence of the "payment" condition in the bond was discovered and a new bond, including the previously omitted condition, was supplied, with an additional provision that "the effective date of this bond shall be the 9th day of June, 1954."  Defendant's contention that there was no consideration for the latter bond must fail.  The bond being under seal, consideration is presumed.  *Goodwin, Executor, Estate of Harry E. Gustin* v. *Cabot Amusement Company*, 129 Me. 36, 41; 149 A. 574.  There is no evidence to overcome the presumption.  See also *Van Valkenburgh* v. *Smith*, 60 Me. 97, 98.

Points 3 and 5. *Insurance Coverage*

It is obvious, by stipulation, that Sherman seasonably applied and paid for the liability and workman's compensation insurance required by Article 4 of his sub-contract, and his insurer did in fact process a claim for personal injury sustained by one of his employees, although by inadvertence the certificate of such coverage was not seasonably filed with Rugo. While this tardiness was a breach of Sherman's obligation, Rugo's remedy which he chose not to apply, was contract provided (in Articles 4 and 6), and the certificates were ultimately supplied. Work and materials were accepted from Sherman for several months between the dates of technical default and the filing with Rugo of the certificates. Sherman's performance was accepted as full. No damage resulted from the lapse. The referee held this assigned breach as immaterial. We hold it to be a "trifle," within the maxim *de minimis non curat lex,* which does not bar plaintiff's recovery. See *Van Clief, et al.* v. *Van Vechten, et al.,* 29 N. E. 1017, 1019 (1st Col.) (N. Y. 1892) ; *LeRoy Dyal Co., Inc.* v. *Allen,* 161 F. (2nd) 152, [5, 6] 156 (4 CCA 1947) ; *A. Belanger & Sons, Inc.* v. *United States of America for the Use and Benefit of National U. S. Radiator Corporation,* 275 F. (2nd) 372, [9] 376 (1 CCA 1960).

Point 4. *Arbitration*

Defendant's challenge of the proceeding upon the basis that plaintiff had not followed arbitration procedure is specifically waived in brief.

Points 6, 7, and 8. *Extras*

The resolution of these issues is factual, as to which the referee's finding, if supported by any credible evidence, is conclusive. *Marshall, Collector* v. *Inhabitants of Town of Bar Harbor,* 154 Me. 372, 380; 148 A. (2nd) 687.

The factual dispute pertaining to Extra No. 1, is clarified significantly by documentary evidence in the way of letters, drawings or clauses in the contracts, upon which no finding other than that which the referee made could be maintained. Not only did the State concede that Sherman was requested to perform this extra work, but the cost of the work had been paid to Sherman during the course of construction, but for the ten percent held back under the terms of the prime contract. Liability of the State for this extra had been acknowledged before the building was accepted.

As to Extra No. 4 (rubbish chute), the prime contract (Plaintiff's Exhibit No. 1) section 15, paragraph 10, page 109 provides that Rugo should provide rubbish chutes for "all contractors" which chutes were to be maintained during the progress of the work. Under prime contract section 13, paragraph 10, Sherman is charged with removing his surplus material from the premises.

Admittedly rubbish chutes never existed, but by agreement a hoist was installed and made available to Sherman in lieu of the chute. This hoist was removed by Rugo before Sherman completed his work and the charge presented by Sherman for this "clean up" was allowed. The evidence supporting the referee's so finding is completely adequate.

Point 9. *Defendant's liability, nature of*

Error is alleged in the referee's finding of "joint and several" liability. As we read the report, the liability was imposed as "joint." The obligation of the bond was assumed "jointly and severally" and the respective "several" portions of the penal sum each exceed the total award. The point raised by defendant is not clear and was not briefed. We find no error.

Point 10. *Order for Execution*

Technically the authority of the referee ended at his determination of condition (of the bonds) broken and estimate (assessment) of the damage (Chapter 113, § 53, R. S.) *Inhabitants of Machiasport* v. *Small, et al.,* 77 Me. 109, 111. Reference to issue or stay of execution was a matter for the court upon action upon the acceptance of the report, but such orders from the standpoint of the reference "are mere surplusage unless such parts affect, to the prejudice of the excepting party, the portions of the award which are authorized and valid." *Hexter* v. *Equitable Fire and Marine Insurance Company,* 123 Me. 77, 78; 121 A. 555. There is no prejudice to the defendant to be found in this surplusage.

Point 11. *Interest*

The date or dates from which interest is to be allowed warrants review. As indicated above, the referee awarded interest from November 20, 1956 upon the total of the three items to which he found Sherman entitled.

In *Inhabitants of Town of Norridgewock* v. *Inhabitants of Town of Hebron,* 152 Me. 280, 283; 128 A. (2nd) 215, our rule as to the allowance of interest (as an incident of compensatory damage) was reviewed and we said:

> "In the absence of a definite agreement to pay interest, our law now recognizes the use of money as valuable and allows interest, in proper cases, as damages for detention of money, when the debtor is in default, * * *. Interest is imposed by law, as damages, for not discharging a debt when it ought to be paid. The principle has long been settled, that if a debt ought to be paid at a particular time, and is not then paid, through the default of the debtor, compensation in damages, equal to the value of money, which is the legal interest upon it, shall be paid during such time as the party is in

default. The important practical inquiry, in each case, in which interest is in question, is, what is the date at which this legal duty to pay, as an absolute present duty, arose."

See also *Milo Water Company* v. *Inhabitants of Town of Milo,* 136 Me. 228, 232; 7 A. (2nd) 895.

The rule in another context was expressed in *Hall* v. *Huckins,* 41 Me. 574, 580 and *Bither* v. *Packard,* 115 Me. 306, 316; 98 A. 929, where it was declared that "(i)nterest, * * * is to be allowed where the law by implication makes it the duty of a party to pay over money to the owner without previous demand."

These principles, as applied to surety bonds, are announced in *Wyman* v. *Robinson,* 73 Me. 384, 386, 390 (in action of debt on replevin bond, interest allowed from the date of the breach of the bond, which breach is evidenced by the judgment in the replevin action) ; *Pennell* v. *Card,* 96 Me. 392, 396; 52 A. 801 (in action on a bond guaranteeing payment of land damage within stated time after adjudication of the County Commissioners, interest allowed from date damages were awarded) ; and *Foster, Treasurer* v. *Kerr & Houston, Inc., et al.,* 133 Me. 389, 401; 179 A. 297 (in action of debt for the benefit of suppliers to prime contractor on contractor's performance and payment bond with damages stipulated "with interest from such date as the court shall determine the same recoverable," interest allowed from the date the bills were due from the contractor), which cases in turn apply the rule recorded in Section 337, Restatement of the Law of Contracts. "Unless made in terms conditional, the promise of a surety is as absolute as that of the principal." 50 Am. Jur., Suretyship, § 176. See also *Foster, supra,* where the performance and payment bond was conditioned in terms in all pertinent parts identical to the bond in issue, and the court said at page 402 "as to notice of breach, or demand of payment,

none need be proved." See also *Maine Central Railroad Company* v. *National Surety Company,* 113 Me. 465, 470; 94 A. 929.

As indicated in *Hebron* our current problem is to determine the date at which the defendant's legal duty to pay arose.

By the terms of the prime contract the entire balance due the contractor was "due and payable" upon acceptance of the work by the owner and issue of final certificate by the owner's architect. The State-owner, through its architect, accepted the State Office Building as completed and authorized final payment on November 20, 1956. By the terms of the Rugo-Sherman sub-contract, payment by Rugo to Sherman was due within 10 days after receipt of the same by Rugo "provided that the Sub-Contractor (Sherman) shall have fulfilled all of the obligations to be performed under this agreement, and has given the Contractor (Rugo) satisfactory evidence that the premises are free from all liens or claims that might be or have been filed against the premises or the moneys due under the Contract to the Contractor."

The referee found upon substantial evidence that Sherman had fulfilled his contract, by performance or mutually acceptable arrangements, and that there were no lienable claims against the building.

Not only is there testimony in the record, but a stipulation, that the money due Rugo, under the contract, with a minor exception not here relevant, was paid by "draft payable jointly to the principal (Rugo) on the bond and the named sureties." Rugo's construction Superintendent stated that "the payment was made approximately in November, 1956. The payment was due, and I believe it was paid when due, and it was due 61 days after July the 31st." Owner's architect testified that on November 20 (1956), he authorized the final payment of some $275,000.00 "to the

Massachusetts Bonding Company." The date of receipt by Rugo or his sureties does not appear in the record.

Comment may be proper upon the category into which the three claims allowed by the referee fall, whether the so-called "extras" stand upon the same footing as the balance due Sherman for work expressly covered by his sub-contract. Sherman claimed as "Extra No. 1" the balance due for changing the finish of certain interior columns. The amount involved in this change was $9,540.00. While there was some controversy as to whether this requirement of Sherman was or was not partially covered by an amendment in the Notice to Bidders, it is undisputed that the State not only acknowledged the validity of this work as an extra, but that it was fully paid for in the progress payments on the contract, except for the retained 10%. This item of work was accepted by the parties as an addition to the contract and assumed the same status as the balance due on the work expressly obligated by the sub-contract.

The extra charge for work entailed by the absence of a rubbish chute falls into another category and became due only upon demand by Sherman, which demand was made in August of 1956 and thereafter became a claim against Rugo, the payment of which was guaranteed by the bond. It follows that for purposes of determining when payment was due, the three claims of the plaintiff stand upon the same footing. They became due and payable to plaintiff within 10 days after Rugo, or his sureties, received final payment under the contract.

Rugo obligated himself to pay Sherman at that time. The purpose and terms of the defendant's bond was to assure that payment. The terms of the bond required no antecedent demand or notice to the defendant. Failure of Rugo to so pay was a breach of his contract. Failure of defendant to so pay was a breach of the bond. Defendant, by electing to litigate, elected to expose itself to liability

for interest. The claims were liquidated and they did not become unliquidated because the defendant disputed them, *Milo, supra*, at page 232, if indeed the liquidity of the claims is important. See Annot. 36 A. L. R. (2) 337-500 Interest on Damages for period before Judgment.

In this connection it is to be noted, although the liability for interest does not turn upon the fact, that the defendant was a party to the final settlement by reason of the final payment being made to Rugo and it, or to Massachusetts Bonding Company. As a party, it must have had notice of Rugo's default in performance not later than the time for final payment. Additionally the defendant, — or Massachusetts Bonding Company, actually received the final payment from the State and has had the use of the money since sometime in November, 1956.

It follows that $39,943.15, the amount found due Sherman by the referee, was due and payable to the plaintiff within 10 days after Rugo, or Rugo and sureties, or sureties, received the final payment. Plaintiff is entitled to 6% interest on said amount from the expiration of 10 days after Rugo, or Rugo and sureties, or sureties received final payment. If this date cannot be stipulated by the parties, certainly records exist from which it can be determined by the trial court. So ordered.

*Appeal sustained as to interest charges only and case is remanded to the Superior Court for computation of interest in accordance with this opinion. Plaintiff's costs are unaffected.*