MILO WATER COMPANY *vs.* INHABITANTS OF TOWN OF MILO.

Kennebec.      Opinion, August 1, 1939.

*McLean, Fogg & Southard,* for plaintiff.
*Fellows & Fellows,*
*Jerome B. Clark,* for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

THAXTER, J.   This action of assumpsit is before this Court on report. It is brought to recover a balance of $6750.00 claimed to be due from the Town of Milo to the Milo Water Company for fire protection service and $1080.00 for interest. The only point at issue is the interpretation of an order of the Public Utilities Com-

mission. For a proper understanding of the matter a survey of the long controversy between the town and the water company is pertinent.

In 1909 the parties entered into a contract under the terms of which the plaintiff agreed to supply water to the defendant. The contract was to run for twenty years. The town agreed to pay $1500.00 each year for the use of forty hydrants and for certain other services a sum equal to the amount of the tax, if any, assessed against the company. In 1920, on petition of the company, the Public Utilities Commission entered an order authorizing an increase in the annual hydrant rental to $40.00 per hydrant. By votes of the town the number of hydrants was increased from forty until in 1929 there were forty-eight. September 30, 1927 the commission ordered a further increase in hydrant rental from $40.00 to $60.00 per hydrant. In promulgating this decree the commission made the following statement: "We shall assume that the water company and the Town of Milo will continue to be guided by the terms of the present contract, except as modified by this and former decrees of this Commission." The commission here was referring to the fact that in accordance with the terms of the original contract the town remitted to the company the taxes which it could have assessed against it. April 1, 1928 the town countered by assessing a tax against the company, the portion of which applicable to the water system amounting to $3837.93. On August 1 following, the company petitioned the commission for an increase in rates to meet this additional operating cost; and on October 26, 1928 the commission entered a decree authorizing an increase in hydrant rental to $140.00 per hydrant to compensate for such taxes. In explanation of its order the commission said: "Although the amount to be paid for municipal fire protection, both in the existing schedule of rates and in the schedule as modified by this order, is ascertained on a per hydrant basis, that fact is merely a convenient method of determining what the proper gross amount to be paid for the fire protection service shall be. The company is affording certain protection within the territory covered by the municipal hydrants. If more hydrants were installed within that territory, the costs to the company for fire protection services would not be increased proportionately to the number of new hy-

drants installed. We shall, for this reason, increase the per hydrant rate of the existing hydrants only, this being the number on which the present revenue requirements are based. If additional hydrants be installed, the per hydrant rate therefore will be fixed at Sixty Dollars ($60.00) which, in our opinion, will be sufficient to reimburse the company for the extra expense that would be incurred in furnishing such additional hydrant service." It is apparent that the commission was seeking to establish a certain minimum amount which the town should pay for fire protection on the assumption that there would be at least forty-eight hydrants for which the town would pay. The following year on June 19, 1929, the plaintiff again petitioned for an increase in rates. The commission in justification of an order filed January 27, 1930 directing an increase in the rates of both private consumers and of the municipality considered with great care the amount of revenue which it felt that the company should receive. It figured that there should be an increase to be paid by the town of $480.00 and by private consumers of $564.00. With reference to the increase to be paid by the town the commission said: "We have increased the hydrant rental for first 48 hydrants from $140 to $150 per year, resulting in increased revenue of $480.00." Then follows the order which so far as it relates to municipal services reads as follows:

"For the first 48 hydrants, each hydrant . . . . . . $150.00
Each additional hydrant . . . . . . . . . . . . . . . . . $ 60.00."

At the annual town meeting held March 14, 1932 the town voted to discontinue as of April 1, 1932 the use of four hydrants and the clerk of the company billed the town for forty-four hydrants at $150.00 each. Immediately, however, on the matter being called to the attention of the president of the company, a corrected bill was sent for forty-eight hydrants at $150.00 each, and the company has always claimed that it was entitled to be paid on this basis. At the annual town meeting held March 13, 1933 the town voted to discontinue the use of three more hydrants.

The plaintiff claims that it is entitled to receive from the town for hydrant rental a minimum amount of $7200.00 per year from April 1, 1932 to December 31, 1938. The town claims that it is only required to pay for forty-four hydrants from April 1, 1932 to

April 1, 1933 and for forty-one hydrants thereafter, and these amounts it has paid. This suit is brought to recover the balance amounting to $6750.00 and interest of $1080.00.

The defendant does not deny that at all times since April 1, 1932 the plaintiff has maintained forty-eight hydrants ready for use but it does claim that the order of the Public Utilities Commission does not require the town to pay a lump sum for fire protection and that it accordingly had the right to discontinue the use of any hydrants and is required to pay only for the balance at the scheduled rate of $150.00 per year per hydrant.

Counsel for the defendant insist that this Court can consider only that part of the commission's finding and order which reads: "For the first 48 hydrants, each hydrant $150." They say that the meaning of these words taken by themselves is clear and that therefore we can investigate no farther. But it is a cardinal rule of interpretation applying to writings generally that every phrase must be read in connection with the whole instrument, and particularly in the case of a decree of a court, and an order of the Public Utilities Commission is in that category, that the pleadings, the issues presented, in short the whole proceedings must be considered to determine what the decree was intended to accomplish. *Mayor and Aldermen of the City of Vicksburg* v. *Henson*, 231 U. S., 259, 34 S. Ct., 95. Courts are concerned today with substance rather than with form, with the spirit rather than with the letter.

It is obvious that the Public Utilities Commission did not view the petition filed June 19, 1929 on which the order in question is based as an isolated proceeding. It is in effect a petition for a modification of its earlier order, which in turn modified an order entered several years before. To determine what the commission intended, the entire proceedings should be considered. From these it is apparent that the commission was endeavoring to provide adequate revenue for the water company and for a proper apportionment of charges between the municipality and private consumers. When the town, as it had a right to do, collected from the company taxes which became a part of its operating expenses, rates for fire protection were raised. In its last order the commission calls attention to the fact that the increase in rental of $10.00 per hydrant would result in increased revenues of $480.00. In its review of

the case accompanying its order of October 26, 1929, it specifically calls attention to the fact that the amount to be paid for fire protection is a gross amount though figured on a per hydrant basis. Looking at the whole record, it is clear that the commission was concerned with the gross amount to be paid by the town for fire protection rather than with the amount to be paid per hydrant and that the rate was established on the assumption that there would be a minimum of forty-eight hydrants. Though the form of the order did not call for the payment of a gross sum as in the case of *Damariscotta-Newcastle Water Company* v. *Itself, Re: Increase in Rates*, 134 Me., 349, 186 A., 799, yet, that a fixed minimum amount should be paid was clearly the intent of the commission. There seems to be no reason whatsoever why this Court should tear an isolated phrase from its context and give to it a meaning clearly at variance with that which the commission intended.

Counsel for the defendant call attention to the fact that bills were rendered by the plaintiff on a hydrant rental basis. This was of course of no consequence to the plaintiff so long as the town paid for the full number of forty-eight hydrants. The significant fact is that there was an immediate protest when the town claimed the right to discontinue certain hydrants and pay only for the balance.

If the town feels itself aggrieved by the order in question, it has the right to apply to the commission for a modification of it. So long as it stands, the town is bound by its terms.

The defendant claims that it is not liable for interest because the claim sued on is unliquidated and in any event is uncertain because of the unsettled state of the law. We can not see that the law is at all doubtful, nor is a claim unliquidated merely because one party disputes it. A demand was made by the plaintiff each year for the amounts here claimed. The defendant was in default for nonpayment. There seems to be no reason why the plaintiff is not entitled to interest.

The record before this Court indicates that the sums claimed became due December 31 of each year. The writ is dated December 12, 1938. The sum claimed for the year 1938 was not then due and payable. The plaintiff is entitled to recover only for the amounts claimed to December 31, 1937, totalling $5700.00, with interest to

the date of the writ amounting to $1069.70. Without prejudice to the right of the plaintiff to bring suit to recover for payments due since December 31, 1937, the entry will be,

> *Judgment for the plaintiff for $6769.70
> with interest from the date of the writ.*