## Casco Castle Company, Petitioner for Approval of Discontinuance of Service.

Cumberland.    March 30, 1945.

*Charles E. Gurney,* for the petitioner.

*Paul L. Powers,* for unnamed consumers.

*Hutchinson, Pierce, Connell, Atwood & Scribner,* for unnamed opponents.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

MURCHIE, J. The bill of exceptions which brings·the proceedings here under consideration to this Court was allowed by the chairman of the Public Utilities Commission on August 26, 1944, pursuant to the provisions of R. S. 1930, Chap. 62, Sec. 63, as amended, now found in R. S. 1944, Chap. 40, Sec. 66.

The petition which instituted the process is dated May 24, 1944, and was filed with the Commission in accordance with Chapter 155 of the Public Laws of 1933 (R. S. 1944, Chap. 40, Sec. 47) to secure approval for discontinuance of the service then being rendered to the public by the petitioner. It was denied by decree dated June 28, 1944, declaring that the petitioner had failed to sustain the burden of proving facts that would warrant the approval sought.

The statute establishes no ground which will justify discontinuance of public service by a public utility as a matter of right but vests authority in the Commission to approve such action and in connection therewith to "impose such terms, conditions, or requirements as in its judgment are necessary to protect the public interest." The procedure is compulsory for all public utilities, as defined in Chapter 40 aforesaid, except those subject in that regard to the jurisdiction of the Interstate Commerce Commission or acting by order of court in bankruptcy, foreclosure or receivership proceedings.

The ground alleged by the petitioner relates to a decree entered by the Commission on May 17, 1944, which, according to the petition, ordered it to repair and replace its "source of supply, pumps, tanks, pipes and other facilities". Specifically the alleged justification for discontinuing service is that the cost of the improvements ordered would exceed any reasonable return thereon, whereby it was clearly intended to assert that the net revenues to be derived from public service, after the improvements required by the order were installed, would be inadequate to yield a fair return on the reasonable value of the property used or required to be used in connection therewith, if valued with due regard to the capital invested in the plant and improvements.

The petitioner made no attempt to raise a question of law under the statute to which it has resorted in this process

concerning the decree of May 17, 1944, but voted on May 23, 1944, first, to cease rendering service on July 1, 1944, and second, to seek authority to do so by filing the present petition. Its first two exceptions to the decree entered thereon allege error of law in rulings that a public utility "upon due notice to its customers, . . . may not lawfully withdraw its property from public use and discontinue its public service" and "may not discontinue its public service without the consent of the Commission" because such action is required by the terms of P. L. 1933, Chap. 155 (now R. S. 1944, Chap. 40, Sec. 47). These exceptions contain no allegation, nor does counsel for the petitioner argue, that the Commission in refusing to approve the voted discontinuance of service abused the discretionary authority intended to be vested in it by the legislation. The cause was presented and argued on these exceptions on the theory that the statute purports to impose a regulation on public utilities that is unwarranted unless the statute is administered with recognition of the right of a utility to withdraw its property from any service that, in the opinion of its owners, will not yield a reasonable return on its value. The obvious purpose of the petitioner's decision to discontinue its service, as of the proceedings to which the exceptions relate, is to nullify the decree of May 17, 1944 without establishing that error of law is involved therein. Such a result may be accomplished by any appropriate procedure for a decree issued by the Commission which is outside the scope of the authority vested in it by statute, because such a decree has no validity, *S. D. Warren Co.* v. *Maine Central Railroad Co.*, 126 Me., 23 (25), 135 A., 526 (528), but it has been adjudicated in several cases that decrees issued within that scope are not subject to attack except for error of law and by the statutory procedure which has been invoked against the present decree. *Hamilton et al.* v. *Caribou Water, Light & Power Co.*, 121 Me., 422 (423),

117 A., 582 (583) ; *S. D. Warren Co.* v. *Maine Central Railroad Co.*, supra; *Stoddard* v. *Public Utilities Commission,* 137 Me., 320, 19 A., 2d, 427.

The principle declared in these cases requires that all of the exceptions here presented be overruled on the ground that they present an attempt to avoid the effect of a decree of the Public Utilities Commission without compliance with the provisions of R. S. 1930, Chap. 62, Sec. 63, as amended by P. L. 1931, Chap. 116 and P. L. 1933, Chap. 6 (now found in R. S. 1944, Chap. 40, Sec. 66), unless P. L. 1933, Chap. 155 (now R. S. 1944, Chap. 40, Sec. 47), provides a statutory method for indirect attack on Commission action, available as an alternative to raising a question of law against a decree affecting a utility entitled to discontinue its public service with the approval of the Commission. Petitioner argued the two exceptions which have been quoted in their pertinent parts on the dual ground that a public utility has an absolute right to discontinue its public service at will and that the statute purporting to vest regulatory authority over such action in the Public Utilities Commission is unconstitutional if it contravenes that right. Reliance for the latter ground is on the Fourteenth Amendment to the Constitution of the United States and the contention must be summarily dismissed on the authority of the Supreme Court of the United States, on which point is seems unnecessary to cite anything more than *United Fuel Gas Co. et al.* v. *Railroad Commission of Kentucky et al.,* 278 U. S., 300, 49 Sup. Ct., 150, 73 L. Ed., 390, where the present Chief Justice declared it to be a rule of the Court, consistently applied:

"that one who has invoked action by state courts or authorities under state statutes may not later, when dissatisfied with the result, assail their action on the theory that the statutes under which the action was

taken offend against the Constitution of the United States."

Since the petitioner sought approval for its voted discontinuance of service under the statute, it does not lie within its power, that approval being denied, to attack the constitutionality of the law in subsequent proceedings on its petition.

In support of its contention that the right of discontinuance of public service by a public utility is a matter of absolute right the petitioner cites decisions of the United States Supreme Court which recognize that there are circumstances which will justify the withdrawal of property devoted to public service from such a use. From two cases language is quoted which carries implication that the issue is for determination by the property owner. In *Munn et al.* v. *People of Illinois*, 94 U. S., 113, 24 L. Ed., 77, Mr. Justice Waite speaking for a majority of the Court declared that although one who devoted his property to public service granted the public a right therein and must submit to control for the common good:

"He may withdraw his grant by discontinuing the use."

This statement was quoted by Chief Justice Taft in a case involving the validity of a statute intended to regulate wages and terms of employment in industry covering a wider field than public service. *Chas. Wolff Packing Co.* v. *Court of Industrial Relations of Kansas*, 262 U. S., 522, 43 Sup. Ct., 630, 67 L. Ed., 1103, 27 A. L. R., 1280. Neither case dealt with legislation designed to safeguard the public interest in proceedings having to do with the abandonment of public service.

The additional cases cited by the petitioner treat the right of abandonment of service as one dependent on facts rather than on the will of the owner of the property. In *Brooks-Scanlon Co.* v. *Railroad Commission of Louisiana,* 251 U. S., 396, 40 Sup. Ct., 183, 64 L. Ed., 323, it was held that a railroad might discontinue a service that could "be kept up only at a loss." The opinion cites the *Munn* case, and substantially quotes its language relative to the withdrawal of property from the grant of a public use. Adjudication is plain that a law purporting to vest power in a regulatory body to enforce operation of a public service at a loss would infringe the Constitution of the United States. The opinions in the *Brooks-Scanlon* case, and in the later decision of *Erie Railroad Co.* v. *Board of Public Utility Commissioners et al.,* 254 U. S., 394, 41 Sup. Ct., 169, 65 L. Ed., 322, were written by Mr. Justice Holmes, the former with unanimous concurrence and the latter with the Chief Justice and two of the Associates dissenting without opinion. In the latter, it is true, the principle is declared in language referring to the absence of profit rather than the presence of loss but the citation of the *Brooks-Scanlon* case on the point carries clear indication that no change or enlargement of the principle earlier declared was intended.

Later decisions make this crystal clear. In *Bullock et al.* v. *State of Florida,* 254 U. S., 513, 41 Sup. Ct., 193, 63 L. Ed., 680 (decided two weeks after the decision in the *Erie Railroad* case, supra, the *Brooks-Scanlon* case is interpreted as representing the principle that the owners of a property devoted to a public use "are not bound to go on with it at a loss if there is no reasonable prospect of profitable operation in the future." In *Railroad Commission of Texas et al.* v. *Eastern Texas Railroad Co. et al.,* 264 U. S., 79, 44 Sup. Ct., 247, 68 L. Ed., 569, the same thought is expressed in the words that "if at any time it develops with reasonable certainty

that future operation must be at a loss, the company may discontinue operation." In this opinion the *Brooks-Scanlon* case was again cited and stated in terms which show that the controlling consideration was the impropriety of compelling service "at a loss."

Neither petitioner's allegations nor its proof meets the requirements of these cases. The fact relied on is that operation of an improved plant will not yield a reasonable return but no evidence was presented to establish the amount of capital the improvements would involve. Proof was that in ten years of operation ending on December 31, 1942, net revenues, after depreciation, had ranged between 1.6 per cent and 10.8 per cent, with an average in excess of 4 per cent according to petitioner's own accounting and on its own conception of plant value. That accounting, it is true, showed an apparent operating loss of slightly more than $200 in 1943 but the operating expenses in that year were more than $500 in excess of the average for the preceding nine years and included a single item of repairs, greater than the loss, which had no counterpart in earlier years.

The first two alleged exceptions present no bases for establishing error in the Commission decree. The additional ones cannot be interpreted as raising a question of law although it is apparent that they were intended to assert that facts found by the Commission have no support in the testimony taken out at the hearing. It has already been decided in this Court that in proceedings before the Public Utilities Commission facts are for the consideration and determination of the Commission, that its findings of fact are final if supported by any substantial evidence and that it is a question of law, reviewable under R. S. 1944, Chap. 40, Sec. 66, whether the record of testimony on which a particular finding is based contains such evidence. *Hamilton et al.* v. *Caribou Water, Light & Power Co.*, supra; *Gilman et al.* v. *Somerset*

*Farmers Co-Operative Telephone Co. et al.,* 129 Me., 243, 151 A., 440. The first of these cases outlines procedure for the guidance of parties involved in hearings before the Commission who may desire to raise issues of fact. It was there stated and we now repeat that:

> "it is . . . the duty of the Commission . . . if requested . . . to set forth in its orders . . . the facts on which its order is based."

It was said on that occasion that if this was not done the statutory remedy for errors of law in that regard might be rendered futile. The rule of practice thus declared was affirmed in *Public Utilities Commission* v. *Lewiston Water Commissioners,* 123 Me., 389, 123 A., 177. See also *Mitchell* v. *Mitchell,* 136 Me., 406, 11 A., 2d, 898, where it was recognized as applicable in its proper field although not in the process then before the court. As it was in the *Hamilton* case, so is it in this one. We cannot determine on the record that a finding that "revenues have in the past been adequate," the factual finding complained of in the third alleged exception, was erroneous because the Commission did not find and was not requested to find as facts either operating revenues or operating expenses. The question of adequacy or reasonableness would depend on the money spread between the one and the other and the rate of return it represented on the value of the property. The question of value is an additional fact concerning which no finding was made or requested.

The fourth and final exception challenges language of the Commission declaring that:

> " 'The evidence presented relating to past income and expenses is material to the issue only so far as it tends to show future prospects.' "

This is consistent with the claim asserted under the first and second exceptions and seems to disclose that the petitioner was not seeking approval of its abandonment of service on the basis of facts it had the burden of establishing by proof but rather that it relied solely on the language hereinbefore quoted from *Munn et al.* v. *People of Illinois,* although the filing of its petition recognized the validity of legislation imposing regulation on the right of withdrawal. If the evidence to which the fourth exception relates was not material to show future prospects, then the record contains no testimony, either direct or indirect, to support the allegation of the petition. There is no merit in the exception.

*Exceptions overruled.*