PUBLIC UTILITIES COMMISSION

*vs.*

COLE'S EXPRESS

RE: MOTOR COMMON CARRIER RATE
INCREASES AND DECREASES

Kennebec.    Opinion, January 21, 1958.

488

*Frank M. Libby,*
*Peter Kyros,*
*Samuel W. Earnshaw,* for Commission.

*Watkins & Rea,*
*Eaton, Peabody, Bradford & Veague,*
*Frank E. Southard,* for Cole's Express.

*Raymond E. Jensen,* for Intervenor.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

DUBORD, J.   This case comes to the Law Court on exceptions to certain rulings by the Public Utilities Commission.

By an order dated November 17, 1952, the Public Utilities Commission, on its own motion, ordered investigation into and concerning the reasonableness and lawfulness of class rates and minimum charges relating to transportation of freight and merchandise by common carriers by motor vehicle.

Following the issuance of this order, the Maine Motor Rate Bureau, a Maine corporation whose purpose is to make rate studies for motor carriers, prepare tariffs and act as agent for carriers in issuing the same, in cooperation with the Public Utilities Commission, engaged in a study of carrier operating costs.

As a result of that study the carriers throughout the state, including the respondent, Cole's Express, except as between points where it is in direct competition with the Bangor & Aroostook Railroad, filed, effective August 6, 1956, tariff schedules providing for increases and decreases in individual and joint motor common carrier freight rates and charges so as to produce uniform rates for all. As to all carriers other than Cole's Express, the rates as filed were permitted to go into effect. As to Cole's Express, although the rates were permitted to go into effect as to its operation between Portland and Bangor which are competitive with other common carriers, a hearing, upon motion of the Public Utilities Commission, was ordered as to motor common carrier class rates and minimum charges applicable from, to and between points in Aroostook County served by the respondent. To restate these facts: Following a study instituted by an order of the Public Utilities Commission, the carriers throughout the state filed uniform rates adjusted only to meet rail competition of the Bangor & Aroostook Railroad. These rates were permitted to go into effect as to all carriers as to the portion of the operation of Cole's Express, which involved no motor common carrier competition. These operations were treated on a different basis. Lower rates are prescribed by the Commission.

The respondent contends that on the record of this case, the findings of the Commission are not supported by any substantial evidence and that the applicable law under the legislative declaration of policy relating to discrimination has been erroneously applied by the Commission.

Maine Motor Rate Bureau was allowed to intervene.

Exceptions were filed by Maine Motor Rate Bureau and Cole's Express under the provisions of § 67, Chapter 44, R. S., 1954; and pursuant to this section the Clerk of the Public Utilities Commission certified the exceptions.

The exceptions of Maine Motor Rate Bureau are five in number. Exception 1, is a general one which alleges that the findings of the Commission are erroneous in law because they are not supported by substantial evidence.

Exceptions 2, 3, 4, and 5, allege that in the absence of a showing by the evidence of a need for deviation from a general base for rates, the action of the Commission in selecting Cole's Express from all other carriers, and applying special rates where Cole's Express had no motor carrier competition, is a violation of the declaration of policy relating to discrimination, as set forth in § 19, Chapter 48, R. S., 1954, which provides that discrimination in rates charged be eliminated.

The respondent, Cole's Express, attacks the decree of the Commission by means of 15 exceptions.

Exception 1, is a general one and alleges that the decree is not supported by substantial evidence.

Exception 2, charges that the decree of the Commission is based upon information not in the record and as a result the respondent has been denied a fair hearing in violation of Article 1, § 6 and § 21 of the Constitution of Maine and of the 14th Amendment of the Constitution of the United States.

In 15 subparagraphs to Exception 2, the respondent sets forth the matters which it says the Commission considered in arriving at its decision, and which matters were not introduced as evidence and made a part of the record in the case.

Exceptions 3, 4, 5, and 6, attack specific findings by the Commission which the respondent says are based on purported information of the Commission extraneous to the record.

Exceptions 7, 8, 9, 10, 11, and 12, attack the decree of the Commission on the grounds that it is a violation of the discrimination provisions of § 19, Chapter 48, R. S., 1954.

Exception 13, alleges that, under the circumstances of this case, the Commission was in error in applying to the respondent the rule of burden of proof, set forth in § 36, Chapter 44, R. S., 1954.

Exception 14, again attacks the decree on the grounds of discrimination and alleges that the burden of proof required of the respondent was met when it filed rates based upon the average costs of a representative group of carriers, including the respondent.

Exception 15, again attacks the decree on the grounds of unfair discrimination.

The position taken by the Commission is that the respondent did not sustain its statutory burden of proof as to the justness or reasonableness of the proposed rate increases. The Commission says that the sole question before this court is whether or not Cole's Express sustained its statutory burden of proof. It contends that if Cole's Express and Maine Motor Rate Bureau desired to challenge the facts stated in the decision, they could have done so, either by way of petition for review of the order, under § 70, Chapter 44, R. S., 1954, or by petition in equity to re-

view both the facts and the law under § 69, Chapter 44, R. S., 1954, or both.

This is an over-simplification of the issues with which we do not agree. Section 70 of Chapter 44, R. S., 1954, authorizes the Commission to rescind, alter or amend any of its orders upon notice to the public utility and after opportunity to be heard.

Section 69 of Chapter 44, R. S., 1954, provides for an alternative method of review by this court.

Prior to the enactment of § 69, the statutory method providing for exceptions in § 67, Chapter 44, R. S., 1954, was the exclusive remedy for raising questions of law relative to decrees of the Public Utilities Commission. *Casco Castle Co., Petitioner,* 141 Me. 222; 42 A. (2nd) 43.

The excepting parties are properly in this court.

While we recognize that when rulings of the Public Utilities Commission are based upon its findings of fact, this court has no right to sustain exceptions on questions of fact, if there be any evidence to sustain the findings, yet it is a well recognized principle of law that whether on the record, any factual finding underlying order and requirement, is warranted by law, is a question of law, reviewable on exceptions. *Public Utilities Commission* v. *Utterstrom Brothers, Inc.,* 136 Me. 263; 8 A. (2nd) 207.

> "When the Commission decides a case before it without evidence, or on inadmissible evidence, or improperly interprets the evidence before it, then the question becomes one of law." *Central Me. Power Co.* v. *Public Utilities Commission,* 150 Me. 257, 261; 109 A. (2nd) 512, *New England Tel. & Tel. Co.* v. *Public Utilities Commission,* 148 Me. 374, 377; 94 A. (2nd) 801, *Chapman, Re: Petition to Amend,* 151 Me. 68, 71; 116 A. (2nd) 130.

As it is clear that the decree of the Commission is based upon information not in the record, and upon assumptions

based on such information, as complained of in the exceptions of Cole's Express, 2, 3, 4, 5, and 6, the first question for determination is whether or not the matters complained of were properly considered by the Commission under the doctrine of judicial notice.

"The matter of which a court will take judicial notice must be a subject of common and general knowledge. In other words, judicial knowledge of facts is measured by general knowledge of the same facts. A fact is said to be generally recognized or known when its existence or operation is accepted by the public without qualification or contention. The test is whether sufficient notoriety attaches to the fact involved as to make it proper to assume its existence without proof. The fact that a belief is not universal, however, is not controlling, for there is scarcely any belief that is accepted by everyone. Those matters familiarly known to the majority of mankind or to those persons familiar with the particular matter in question are properly within the concept of judicial notice. Judicial knowledge is continually extended to keep pace with the advance of art, science, and general knowledge." 20 Am. Jur. 49, § 18, Evidence.

"Judicial notice in any particular case is not determined or limited by the actual knowledge of the individual judge or court. There is a basic distinction between judicial notice and judicial knowledge. In those instances where a judge is personally conversant with a fact which is judicially cognizable, proof thereof is not required. It is not essential, however, that matters of judicial cognizance be actually known to the judge. If they are proper subjects of judicial knowledge, the judge may inform himself in any way which may seem best to his discretion and act accordingly. On the other hand, facts which are not judicially cognizable must be proved, even though known to the judge or to the court as an individual. In other words, the individual and extrajudicial knowledge

on the part of a judge will not dispense with proof of facts not judicially cognizable, and cannot be resorted to for the purpose of supplementing the record." 20 Am. Jur. 52, § 21, Evidence.

"Courts may properly take judicial notice of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence. Other common statements of the rule are that the courts will take notice of whatever is, or ought to be, generally known within the limits of their jurisdiction; and that they ought not to assume ignorance of, or exclude from their knowledge, matters which are known to all persons of intelligence. On the other hand, judicial knowledge of facts is measured by general knowledge of the same facts, and courts will not take judicial notice of facts which are not matters of common and general knowledge." 31 C. J. S. 510, § 9, Evidence.

The Commission in an endeavor to sustain its position upon this issue states that it was within its power to properly take notice of facts within the normal scope of its expert knowledge and administration in the transportation field; and it sets forth the following citations in support of its position.

*Milo Water Co.* v. *Inhabitants of Milo,* 136 Me. 228; 7 A. (2nd) 895.

*Market St. R. Co.* v. *Railroad Commission of California,* 324 U. S. 548.

*Re Casco Castle Co.,* 141 Me. 222; 42 A. (2nd) 43.

*State of Wisconsin* v. *Federal Power Comm.,* 201 F. (2nd) 183.

*Nichols* v. *Nichols,* 126 Conn. 614, 13 A. (2nd) 591.

Wigmore, *Evidence* (3rd Ed.) Sec. 2567.

42 Am. Jur. *Public Administration Law,* Sec. 217. 18 A. L. R. (2nd) 552 *et seq.*

A careful study of the foregoing citations discloses that not only do they not support the position taken by the Commission but, on the contrary, support the position taken by Cole's Express.

In the case of *Milo Water Company* v. *Milo, supra,* the Commission, in giving consideration to matters not strictly in the record merely viewed the pending petition, not as an isolated proceeding, but as part of former proceedings involving the same issue; and the position of the Commission was sustained by this court.

In the case of *Market St. Ry. Co.* v. *Railroad Commission of State of California et al.,* 324 U. S. 548; 65 Sup. Ct. Rep. 770, the court held that:

> " 'Due process' requires that commissions proceed upon matters in evidence and that parties have opportunity for cross-examination and rebuttal."

However, the decision was based on the court's interpretation of the rule to the effect that due process deals with matters of substance and is not to be trivialized by formal objections that have no substantial bearing on ultimate rights.

In the case before us for consideration and determination, we are of the opinion that the matters complained of are not trivial, but are matters of substance.

In the case of *State of Wisconsin* v. *Federal Power Commission,* 201 F. (2nd) 183, the court, apparently recognizing the general doctrine that due process requires ordinarily an opportunity for cross-examination and rebuttal, held that there are occasions when a regulatory agency can and should take official notice of the reports filed with it by a regulated company. The issue before us now is not at all identical.

> "Most matters which the court may notice fall into one of two classes, those which come to the knowledge of men generally in the course of the ordinary

experience of life, and are therefore in the mind of the trier, or those which are generally accepted by mankind as true and are capable of ready demonstration by means commonly recognized as authoritative." *Nichols* v. *Nichols*, 126 Conn. 614; 13 A. (2nd) 591, 595.

"Moreover, where it is necessary to make an adequate record of the case for an appeal, the source of information should be read into the record or be marked as an exhibit; or, if the trial court refuses to take notice of the matter, it should, unless it would otherwise appear of record, be marked for identification; and, in a jury trial, the court may in its discretion cause the matter to be submitted to the jury either by having it read into the record or marked as an exhibit, or may place it before them in its charge." *Nichols* v. *Nichols, supra.*

There is nothing in § 2567, Vol. IX, Wigmore on Evidence, 3rd Ed., which supports the contentions of the Commission.

On the contrary, § 1805, Vol. VI, Wigmore on Evidence, 3rd Ed., sustains the position of Cole's Express. Here the author says:

"A special danger of the infraction of this fundamental rule is found in proceedings before administrative officials, - - such as the Interstate Commerce Commission, the Federal Trade Commission, and other administrative bodies where in their accumulated experience a certain amount of information lies hidden. It ought to be elementary, as it is fundamental, that they should make no use of relevant matters in their personal (supposed) knowledge, or in their official documents, without stating them and putting them into the record during the hearing. Otherwise, the party affected has no fair chance to test and perhaps dispute that supposed knowledge; nor is the appellate tribunal furnished with a dependable record. Yet the breach of this fundamental rule has been not infrequent.

The author in the same Vol., Page 258, also quotes with approval the following statement of Justice Cardozo in *Ohio Bell Telephone Co.* v. *Public Utilities Commission,* 301 U. S. 292; 57 Sup. Ct. Rep. 724, at 729.

> " 'From the standpoint of due process - - the protection of the individual against arbitrary action - - a deeper vice is this, that even now we do not know the particular or evidential facts of which the Commission took judicial notice and on which it rested its conclusion. Not only are the facts unknown; there is no way to find them out. When price lists or trade journals or even government reports are put in evidence upon a trial, the party against whom they are offered may see the evidence or hear it and parry its effect. Even if they are copied in the findings without preliminary proof, there is at least an opportunity in connection with a judicial review of the decision to challenge the deductions made from them. The opportunity is excluded here. The Commission, withholding from the record the evidential facts that it has gathered here and there, contents itself with saying that in gathering them it went to journals and tax lists; as if a judge were to tell us, 'I looked at the statistics in the Library of Congress, and they teach me thus and so.' This will never do if hearings and appeals are to be more than empty forms. What the Supreme Court of Ohio did [in sustaining the order of the Commission] was to take the word of the Commission as to the outcome of a secret investigation, and let it go at that. 'A hearing is not judicial, at least in any adequate sense, unless the evidence can be known' "

> "Administrative officers who are required to make a determination upon or after a hearing in the exercise of a judicial or quasi-judicial function cannot act on their own information as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and nothing can be treated as evidence

which is not introduced as such, for there is no hearing where a party cannot know what evidence is offered or considered and is not given an opportunity to test, explain, or refute. A board required to reach a finding after a hearing cannot supply the lack of evidence by its own unaided opinion. Papers in the files of a commission, special knowledge gained from experience or other hearings, or information secured by independent investigation apart from the hearing, and not made known upon the hearing, is not evidence properly in the case. It is a denial of the fundamentals of a trial for a commission to reach a decision on evidential facts not spread upon the record and upon information secretly collected and not disclosed, which the party complaining had no opportunity to examine or analyze, explain, or rebut." 42 Am. Jur., 464, Public Administrative Law, § 130.

"The process by which proof is simplified in a judicial proceeding by the court's taking judicial notice of matters of common knowledge permits an administrative tribunal to take official notice of the same facts of which a court takes notice. However, administrative agencies necessarily acquire special knowledge in the fields of their activities, and the acquisition of this knowledge is the purpose of their existence in many instances. Accordingly, the field in which official notice may relieve from the necessity of proof is broadened to permit administrative officers to use such knowledge, but administrative officers should make no use of their personal knowledge or of data accumulated by them unless the matter is disclosed and put upon the record so that the supposed fact may be supplemented, explained, or refuted by contrary evidence, and so that a court, on judicial review, may be informed of what facts the agency has utilized, so as to determine the existence of evidence in support of the decision." 42 Am. Jur., 464, Public Administrative Law, § 130.

The following general rule is set forth in an interesting Annotation on the subject in 18 A. L. R. (2nd) 552, at 555:

"As a general proposition, it is not proper for an administrative authority to base a decision of adjudicatory nature, or findings in support thereof, upon evidence or information outside the record, and in particular upon evidence obtained without the presence of and notice to the interested parties, and not made known to them prior to the decision."

A Maine decision, *Gauthier's Case,* 120 Me. 73; 113 A. 28, is cited in support of the foregoing rule. While the *Gauthier Case* was a workmen's compensation case, the position of Cole's Express is supported. In this case a decree was based in part upon alleged facts, recited in the Commission's findings, which did not appear in the evidence. In sustaining the appeal, this court said:

"It should go without saying that such final findings must be founded upon evidence produced under such circumstances as to give to both parties a full opportunity for explanation and refutation."

"It is generally held that, in an adjudicatory or quasi-judicial proceeding before a public administrative body, nothing may be treated as evidence which has not been introduced as such and incorporated in the record. It is the duty of an administrative body to consider as evidence everything introduced as such and nothing more; a decision or finding not supported by the evidence may not be sustained on the theory that the administrative body had before it extraneous, unknown, but presumptively sufficient information to support its finding or decision. An administrative body exercising adjudicatory or quasi-judicial functions must act solely on the basis of the evidence before it and may not act on the basis of personal knowledge or on matters dehors the record. However, the fact that the administrative body has looked beyond the record proper does not invalidate its action unless substantial prejudice is shown to result.

"An administrative body may not receive and consider evidence without apprising the parties of that fact and giving them an opportunity to meet it. It may not rely on evidence produced in other proceedings where the parties are not notified and given an opportunity to rebut such evidence. Papers in the files of an administrative tribunal but not introduced in evidence may not be considered, and it may not base its decision on a report made by its investigator, unless the report is introduced in evidence." 73 C. J. S., 442, § 123, Public Administrative Bodies and Prodecure.

Among the cases cited in support of § 123, *supra,* are *Application of Palmer,* 87 N. Y. S. (2nd) 655, where the court held that Administrative hearing officials may not act upon and on their own knowledge nor base their decisions on matters dehors the record.

In this case the court further said:

"A trier of facts can find facts only on evidence, not on his own knowledge."

The court further pointed out that the right of judicial review becomes naught but an empty form if the administrative hearing officials, no matter how well qualified, are permitted to determine contested matters on the basis of their own professional opinions rather than the printed record.

See also *Hunter* v. *Zenith Dredge Co., et al.,* 19 N. W. (2nd) 795 (Minn.)

The Commission in its brief cites the following excerpt from 18 A. L. R. (2nd) 552, at 584.

"An error of an administrative authority in basing a decision upon evidence outside the record or obtained without the presence of and notice to the parties, is not prejudicial where an aggrieved party has an opportunity to meet such evidence in administrative review proceedings."

The Commission then argues that the respondent had full opportunity to file a petition for amendment of the Commission's order under § 70, Chapter 44, R. S., 1954, or by filing a petition in equity under the provisions of § 69, Chapter 44, R. S., 1954. We have already indicated that § 70 does not give the respondent authority to file a petition for amendment, but the authority is given to the Commission to rescind, alter or amend its decrees; and we have also pointed out that § 69, is an alternative procedure; and that the respondent is properly before this court under the provisions of § 67, Chapter 44, R. S., 1954.

It is our opinion that the Commission erred in basing its findings upon evidence or purported knowledge which is not made a part of the record. Without listing in detail all of the matters complained of in the exceptions of Cole's Express numbered 2 to 6 inclusive, we recite as objectionable, references to annual reports filed by other motor carriers, to special studies of tariffs filed either with the Commission or with the Interstate Commerce Commission, to cost sheets filed by Cole's Express in other proceedings, and to a cost study made by the New England Motor Rate Bureau. The exceptions of Cole's Express, 2 to 6 inclusive, must be sustained.

As previously indicated, Exceptions 1 of both appellants attack the decree on the grounds that it is not supported by substantial evidence. In the absence of a complete record, we do not pass upon this issue.

Exception 2 of Maine Motor Rate Bureau alleges the decree is unlawful and unreasonable, and is an unwarranted abuse of discretion for the reason that it singles out certain class rates of Cole's Express and applies different treatment without any evidence in the record to warrant such treatment.

Exception 3 alleges that in this case a uniform increase rate structure of all common carriers is under investigation,

and thus uniform and non-discriminating rates are required unless there is evidence to show a need for deviation from the general base. This exception further alleges that there is no such evidence in the record, and as a consequence, the decree violates the declaration of policy set forth in § 19, Chapter 48, R. S., 1954.

Exception 4 alleges the decree is unlawful and without evidence to support it, because it requires Cole's Express to maintain a lower scale of class rates where there is no motor carrier competition than where there is motor carrier competition, when there is no evidence of any different transportation conditions.

Exception 5 specifically attacks a statement in the decree of the Commission viz.:

"We are not of the opinion that the declaration of policy as set forth in Section 19, Chapter 48, R. S., 1954, contemplates that all motor common carriers shall observe the same level of rates regardless of their costs of operations." It is contended that such a statement is incorrect and inapplicable for the reason that only uniform class rates based upon average costs are involved, and that the declaration of policy as applied to make a uniform rate structure does require that all motor common carriers observe the same level of the uniform class rates regardless of their costs of operation.

Exception 7 of Cole's Express alleges there is no proper and lawful basis for prescribing rates except on a uniform basis as set forth in the tariff schedule of rates which treated all carriers alike on a mileage basis and regardless of location.

Exception 8 alleges that the decree is unlawful and prejudicial to the rights of the respondent in that it prescribes intrastate class rates lower than interstate class rates for the same service, and thus amounts to a confiscation of re-

spondent's interstate revenues for the purpose of subsidizing the movement of intrastate traffic.

Exception 9 attacks the statement of the Commission contained in Exception 5 of Maine Motor Rate Bureau.

Exception 10 attacks the decree on the grounds that it is an unwarranted abuse of discretion as it singles out certain class rates of Cole's Express for special and different treatment without any evidence in the record to warrant such action.

Exception 11 attacks the decree on the grounds that there is no evidence to warrant a need for deviation from the general basis of rates where the dockets under investigation created a uniform class rate structure for all motor carriers.

Exception 12 attacks the decree on the ground that Cole's Express was required to maintain a lower scale of class rates where there is no motor carrier competition without a showing of any different transportation conditions.

Exceptions 13 and 14 allege that the Commission erroneously applied the rule of burden of proof where a uniform class rate structure was under consideration, and further avers that the burden of proof was met when Cole's Express filed rates based upon the average cost of a representative group of carriers including Cole's Express.

Exception 15 avers that the rates prescribed by the Commission are discriminatory and unjust, in that they give unfair advantages between shippers.

It will be seen that excluding Exception 1 of Maine Motor Rate Bureau, and Exceptions 1, and 2 to 6 inclusive of Cole's Express, the remaining exceptions constitute an attack upon the decree of the Commission on the grounds it is a violation of the discrimination provisions of § 19, Chapter 48, R. S., 1954. This issue cannot be decided without a study of the complete record in order to determine whether or not

504

a need is shown for a deviation from the general rate base. Consequently, we do not rule upon these remaining exceptions.

As to the exceptions of Cole's Express, 2 to 6 inclusive, the entry will be:

*Exceptions sustained.*