**AUGUSTA WATER DISTRICT**

v.

**Walter C. WHITE et al.**

Supreme Judicial Court of Maine.

Feb. 4, 1966.

Richard B. Sanborn, Augusta, for plaintiff.

John G. Feehan, Augusta, for Public Utilities Commission.

McLean, Southard & Hunt, by Frank E. Southard, Jr., Augusta, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and DUFRESNE, JJ.

WEBBER, Justice.

The Augusta Water District, a corporation specially chartered by the Legislature, seeks to have the Public Utilities Commission determine its necessity to take land of the defendants by eminent domain. Its petition is brought pursuant to 35 M.R.S.A. Sec. 3294. The District proposes to erect an appropriate facility on the land so condemned in which to install and maintain a pump on an existing intake leading from Lake Cobbosseecontee to a pumping station some 1500 feet from the proposed location. Water is received at the East Winthrop pumping station from Lake Cobbosseecontee and from Carleton Pond through separate pumps capable of pumping from either source but not from both at the same time. The water is then transmitted to Augusta.

The first issue is whether or not the District has the right to take water from Lake Cobbosseecontee in any event. It is urged that if such right does not exist, then

there can be no necessity for such land taking. The answer to this question must be sought in the Private & Special Laws of Maine.

In 1885 water was supplied for use in Augusta by the Augusta Water Company. P. & S.1885, Ch. 502, Sec. 1 amended the charter of that company by providing in part that it should have the right to "take, detain and use the water of * * * Cobbosseecontee lake lying in Manchester and Winthrop * * *."

■ P. & S.1903, Ch. 334 incorporated the Augusta Water District with a territory comprising certain wards in Augusta and authorizing the District to take water from the Kennebec River and China Lake and supply it to the inhabitants of the District and of certain towns. By Sec. 6 the District was empowered to acquire "the entire plant, property and *franchises, rights and privileges* now held by the Augusta Water Company within said district and said towns of Chelsea, Vassalborough, China and Manchester, *including all * * * waters, water rights * * * owned by said company and used or usable in supplying water in said district* and towns * * *." (Emphasis ours) Although the language is not free from ambiguity we construe the intent of the Legislature to be that the right to take water from Lake Cobbosseecontee which was "used or usable in supplying water in said district" was to be transferred to the new District.

By P. & S.1905, Ch. 4 the District was given the right to "divert and use water from Carleton pond." By P. & S.1907, Ch. 17 the District was authorized to "supply water * * * in that portion of Winthrop known as East Winthrop and *along its existing pipe line."* (Emphasis ours)

■ It is admitted that the pipe line running from Lake Cobbosseecontee to the East Winthrop pumping station was in existence at least by 1906 and has been in use by the District ever since. It is not suggested that the old Augusta Water Com-

pany remains in existence or has engaged in the business of supplying water since its property and franchises were acquired by the District. We are satisfied that when these several acts of the Legislature are read together, the right of the District to take water at East Winthrop from Lake Cobbosseecontee cannot be doubted. Such has been the interpretation given to these legislative acts for a period of about sixty years by those most directly concerned, an interpretation never heretofore challenged. The Public Utilities Commission upon review of the several pertinent private and special laws concluded that the contention of the landowners was without merit and we concur.

■ Even conceding the right in the District to take water from Lake Cobbosseecontee, a question arises as to whether the right of eminent domain afforded by the Legislature is broad enough to warrant the taking of land in Winthrop. In 1907 the District possessed the right, inter alia, to take "for the purposes of its incorporation * * * any land * * * necessary for * * * power for pumping its water supply through its mains, * * * for laying and maintaining aqueducts and other structures for taking, distributing, discharging and disposing of water * * *." P. & S.1907, Ch. 17. No geographical limitations are imposed on such taking as long as it is employed in furtherance of the "purposes of its incorporation." The initial purpose of incorporation was "supplying the inhabitants of said district (and of the four named towns) and such municipalities, together with the city of Augusta, with pure water for domestic and municipal purposes." P. & S.1903, Ch. 334, Sec. 1. P. & S.1907, Ch. 17, the very act which by amendment fixed the scope of the power of eminent domain, by its Sec. 3 enlarged the purposes of incorporation to include the supplying of water "in that portion of Winthrop known as East Winthrop." It is clear that the proposed taking will be for the purpose of supplying pure water in and for the specified areas. The District there-

fore needs only to demonstrate the necessity as to the particular chosen location to exercise the right of eminent domain.

 At the close of the first hearing on this petition the Commission was of opinion that insufficient consideration had been given to redesigning the East Winthrop pumping station so as to use both supplies, Lake Cobbosseecontee and Carleton Pond, at the same time. Accordingly, it was unable to find "that the public exigency necessitates an appropriation of the land sought by Petitioners," and the petition was denied. The District thereupon undertook further engineering studies and seasonably filed a petition for rehearing and reopening of the decision and order. Over the objection of the respondents the Commission ordered the matter reopened and assigned it for further hearing. The respondents contend that the decision of the Commission on the issue of necessity was final and not subject to reopening under 35 M.R.S.A. Sec. 306. It is urged that Sec. 306 should be deemed applicable only to rates, tolls, charges and schedules where changed circumstances may require adjustment. Sec. 306 by its own terms, however, is not so limited. It provides: "The commission *may* at any time upon notice to the public utility, and after opportunity to be heard as provided in section 293, rescind, alter or amend any order fixing any rate or rates, tolls, charges or schedules or *any other order* made by the commission, and certified copies of the same shall be served and take effect as provided for original orders." (Emphasis ours) By its Rules of Practice and Procedure promulgated March 1, 1962 the Commission has provided the mechanics for rehearing and reopening. Rule 5, Sec. 5.1 provides in part: "Applications for rehearing to change, modify or vacate a decision or order of the Commission shall be by petition, * * * filed with the Commission, and such application must be made within 20 days after service of any determination or order and shall set forth specifically the grounds upon which the applicant considers said decision or order

to be unreasonable, unlawful or erroneous. * * * Parties may apply to the Commission to reopen a proceeding for the purpose of rescinding, amending, or altering an order or determination in the same manner * * *." The Commission has thus provided an orderly and reasonable method by which a petitioner who acts promptly may seek a reopening or rehearing in a matter in which any order has been made. Under the statute the Commission has discretion as to whether or not it will grant reopening or rehearing. The Commission may in any event upon its own motion order reopening or rehearing and rescind, alter or amend any order which it has made. Under Sec. 306 the petitioner cannot obtain a reopening or rehearing *as of right* so as to be barred from immediate and direct judicial review of issues of law under 35 M.R.S.A. Sec. 303. See P. U. C. v. Cole's Express, 153 Me. 487, 501, 138 A.2d 466, 474. In the instant case the Commission in its order for reopening said in part: "Petitioner contends that since the Commission's decree it has made further engineering studies and seeks the opportunity to present the results of such study to the Commission. * * * If the petitioner has further engineering data to present, we are of the opinion that he should have the opportunity to do so. * * * To deny the utility the opportunity to present additional evidence in the case would not be consistent with the regulatory function of the Commission, whose orders and decrees are predicated upon the public good." We are satisfied that the decision to reopen for the reasons stated was clearly within the discretionary power of the Commission, and no legal error was thereby committed.

 At the second hearing held pursuant to this order the District presented additional expert testimony, the nature of which was to compare possible methods of adding to the capacity to take water from Lake Cobbosseecontee and supply the maximum anticipated requirements of the District on a long range projection. Pending the rehearing the Commission employed its own independent and impartial engineer to study

the possible alternatives and appraise the necessity of taking land of the respondents. All of these expert witnesses were in complete agreement that the proposed plan which included the taking and use of the property of the respondents was preferable in terms of economy, practicality and efficiency to any suggested alternative. The respondents offered no evidence on this issue. In the face of this undisputed evidence, some of it drawn from the impartial expert selected by the Commission itself, none of it manifestly incredible or fallacious, it would be difficult to see how the Commission could have found otherwise than it did without committing legal error. See Central Maine Power Co. v. P. U. C., 150 Me. 257, 261, 109 A.2d 512; see New England Tel. & Tel. Co. v. P. U. C., 148 Me. 374, 377, 94 A.2d 801. However that may be, the Commission concluded as a result of the rehearing that the District had satisfied its burden of proving that necessity which would justify the taking of the respondents' land.

In its order reaching this conclusion the Commission said in part: "It is most difficult for this Commission to conclude from the factual evidence of record in this case that the proposed taking is necessary, as suggested by the District. However, we cannot substitute our judgment for the uncontroverted testimony of expert witnesses, as stated in the record before us. P. U. C. v. Cole's Express, 153 Me., Page 487 [138 A.2d 466]." The respondents contend that this language can only be interpreted as a finding that in the Commission's judgment the proposed taking was not necessary and the District had not met its burden of proof. We do not so construe it. In the light of the argument tendered it well may be that the phrasing could have been happier but we see in this portion of the decree no more than an expression of reluctance on the part of the Commission to reach a conclusion which, though compelled by the undisputed facts, is so understandably distasteful to the respondents. The citation of Cole's Express may well have been prompted by language

in that opinion at page 500, 138 A.2d at page 473: "The Court (in Application of Palmer, 275 App.Div. 5, 87 N.Y.S.2d 655) further pointed out that the right of judicial review becomes naught but an empty form if the administrative hearing officials, no matter how well qualified, are permitted to determine contested matters on the basis of their own professional opinions rather than on the printed record." This dictum was not inserted to diminish the judgmental responsibility of the Commission but was included not only to underscore the proposition that contestants must have opportunity to test the facts on which a decision is based but also to support the holding of the case that the Commission may not base a decision upon information not in the record and upon assumptions based upon such information unless within the realm of judicial notice.

We think the Commission reflected its own final judgment based upon the undisputed evidence when it wrote: "We conclude that the plan proposed by the District is the most economical and practical plan for increasing the safe yield of the sources of water supply of the District for the reasonable future. Alternate plans would only result in higher construction costs, with likely higher financing costs and higher rates. The need of the District for water is serious and public exigency requires a new pumping station at Welch's Point (the location of the proposed taking)."

The respondents assert that the District proposes to take more land than is necessary for an adequate facility. We are satisfied that it was peculiarly within the province of the Commission to determine on the basis of supporting evidence that the land area to be taken was suitable and appropriate for the proposed facilities and that it was not excessively large. It would be improper and most inappropriate for us to substitute our judgment for that of the Commission in this regard.

The entry will be

Appeal denied.

RUDMAN, J., did not sit.