STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET AP-13-1
JAW-CUM- 8/16/2013

FAITH TINSMAN
    Petitioner

v.

DECISION AND ORDER

MAINE DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

    Respondent

16 AUG '13 AM8:38

Before the court is a Rule 80C petition filed by Faith Tinsman seeking

review of the Maine Department of Health and Human Services August 27, 2012,

administrative child support decision that relieved Adam Scott ("Scott") of the

legal duty to support his child. For the following reasons, the decision of the

DHHS is reversed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Faith Tinsman and Adam Scott are the parents of Zachary Scott, born

October 18, 2009. (D-1.) Faith Tinsman (the "Petitioner") is the custodial parent

and receives public assistance (TANF and MaineCare) from the State. (Tr. 5

(Aug. 2, 2012).)[1] In March 2011, the State of Maine Department of Health and

Human Resources ("DHHS"), pursuant to 19-A M.R.S. § 2304(8) (2012) and the

*Maine Child Support Enforcement Manual*, issued a decision requiring Scott, the

non-custodial parent, to pay child support of $128 per week. (R. D-1.) In

---

[1] Citations to the License Revocation Proceeding will be (R. L.R. __.) Citations to the
License Revocation Transcript will be (Tr. L.R. __(Aug. 2, 2012).) Citations to the Child
Support Hearing will be (R. C.S. __.) Citations to the Child Support Hearing Transcript
will be (Tr. C.S. __ (Aug. 2, 2012).) Citations to the Record of the Motion to Modify
Support Proceeding will be (R. D-__,__.)

1

September 2011, Scott requested a hearing to modify the March 2011 child support determination. (R. D-5.) In December, DHHS issued a decision that reduced Scott's child support obligation to $102 per week, based on findings that Scott lost his job and that his income was reduced from $26,000 to $19,032 per year in unemployment benefits. (R. D-5, 1; Tr. C.S. 2-3 (Aug. 2, 2012).)

In July of 2012, DHHS served Scott with notice that it intended to revoke his Maine State licenses for nonpayment of child support. (R. D-1.) On July 10, 2012, Scott requested a hearing on the notice of license revocation. (R. L.R., Ex. HO-1, 4.) Subsequently, on July 22, 2012, Scott requested a hearing to reduce his child support obligation. (R. L.R., Ex. HO-1, 4.)

Although the child support hearing and the license revocation hearing dealt with different issues, and were held separately, they both were held on August 2, 2012. Hearing Officer Tamara Longanecker presided over both hearings. Scott appeared on his own behalf, Tinsman appeared on her own behalf, and Agent Jodi Philippon appeared on behalf of DHHS's Division of Support Enforcement and Recovery. (Tr. L.R. 1-2 (Aug. 2, 2012).)

The hearing officer stated at the beginning of the child support hearing that the two hearings were separate and involved separate issues,

> we just had a hearing regarding an enforcement action, now we are going to go forward looking at the current order and look at if that should be amended. [. . .] I know I just swore all you folks in but just let me swear you in since this is a new hearing . . . [.]

(Tr. C.S. 1 (Aug. 2, 2012).) The hearing officer had made that same point throughout the prior license revocation hearing. (*See* Br. of Resp. 4, n. 7) (statement of hearing officer that the two hearings involved different issues and were separate.) Additionally, the hearing officer made the point that documents

2

presented at the license revocation hearing, including the prior child support order, would not be made part of the child support hearing unless they were presented again.

> The only documents I have to put in the record at this time are collectively Hearing Officer [Exhibit] number one, the Notice of Hearing Dated July 11, 2012, the request for admin hearing dated July 10, 2012 and the letter from Mr. Scott dated July 10, 2012. Ok so let's get the current order then in the record. I know you just gave it to me on the last case, ok . . . let me just get it in the record here.

(Tr. C.S. 2.)

The record of the child support hearing included evidence of Scott's earned income and unemployment benefits between May 2010 and August 2, 2012. (R. C.S. D-1, Tr. C.S. 6-9 (Aug. 2, 2012).) Additionally, Scott testified that he last worked as a direct support professional at Granite Bay Care and that he had been unemployed since April of 2012. (Tr. C.S. 6-9 (Aug. 2, 2012).)

As for Scott's current ability to earn income, Scott testified that he was a 23-year old high school graduate and that he had a steady work history doing mostly manual labor. (Tr. C.S. 6-9 (Aug. 2, 2012).) He testified that he had attention deficit hyperactivity disorder (ADHD), for which he was taking medication and receiving counseling. (Tr. C.S. 7-9 (Aug. 2, 2012).) Additionally, Scott testified that he was actively seeking work with assistance from Vocational Rehab, and that he recently interviewed at Dunkin Donuts and was awaiting a job offer. (Tr. C.S. 6-9 (Aug. 2, 2012).) Scott testified that the job would pay at least minimum wage ($7.50 per hour), and perhaps as much as $8.00 per hour. (Tr. C.S. 7 (Aug. 2, 2012).)

Tinsman testified at the August 2, 2012, child support hearing that, she worked part-time earning $8.10 per hour, received $70 per month in TANF, and

3

paid $49 per week for daycare. (Tr. C.S. 3-5 (Aug. 2, 2012); R. D-2.) In addition to Tinsman's testimony Agent Philippon argued that Scott's child support obligation should be determined in accordance with the guidelines by imputing to him annual income equivalent to minimum wage based on the ability to work full-time earning minimum wage. (Tr. C.S. 9 (Aug. 2, 2012).) Hearing Officer Longanecker took the matter under advisement. (Tr. C.S. 10 (Aug. 2, 2012).)

On August 27, 2012, the hearing officer issued a child support decision that reduced Scott's child support obligation to zero and also relieved him of a duty to provide health insurance and to pay a portion of the child's uninsured medical expenses. (R. A, 4.) The hearing officer based her findings on Scott's testimony that he was unemployed, taking medication, attending counseling, working with vocational rehab, and looking for a job. (R. A, 1.) Additionally, the hearing officer concluded that Scott "is currently homeless, literally sleeping on the street and eating at soup kitchens," and that he was experiencing "a housing and employment crisis. (R. A, 2.) Based on those findings, the hearing officer concluded that Scott was not voluntarily unemployed and that no income could be imputed to him. (R. A, 2.)

Subsequent to the hearing officer's findings, Tinsman filed an administrative appeal of the child support decision, challenging the findings that Scott's unemployment was involuntary and that he lacked the capacity to earn income or to receive unemployment benefits. (R. HO-1, 6-8.) On November 7, 2012, Hearing Officer Jeffrey Strickland held a hearing on the appeal. (Tr. A.P. 2 (Aug. 2, 2012).) On December 6, 2012, he issued a decision affirming the child support decision of hearing officer Longanecker. Specifically, Strickland found that, "the evidence in the record does not support that the prior Hearing Officer

4

[Longanecker] erred in not imputing income to [Scott] on the basis of voluntary unemployment." (R. 3.)

On January 3, 2013, Tinsman filed a timely petition for judicial review.

## II. DISCUSSION

A. *Identifying the Operative Decision*

First, this Court must determine whether Hearing Officer Longanecker or the subsequent affirmation of that decision, by Hearing Officer Strickland, is the operative decision in this appeal. The appeal to this Court presents a unique circumstance where the Petitioner has filed the appeal, but has joined the respondent's brief filed by the Attorney General's Office. Here, both the respondent and the petitioner contend that Hearing Officer Strickland acted in an appellate capacity in reviewing Hearing Officer Loganecker's decision to impute no income to Scott and simply determined whether Hearing Officer Longanecker arrived at the proper decision.

The Law Court has held that where there have been two levels of administrative decision-making, the most recent decision will be the one subject to Superior Court review, if the most recent decision-maker had *de novo* capacity and/or the authority to conduct additional fact-finding. *See Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 17, 15 A.3d 1263. In this instance, it is clear that Hearing Officer Strickland's authority was limited to,

> [w]hether the decision was decided incorrectly based on the
> evidence submitted at the hearing and the requirements of the
> Manual. Evidence not part of the hearing record may be considered
> at the appeal hearing if the evidence was offered but incorrectly
> excluded at the hearing.

10-144 C.M.R Ch. 351 ch. 12, § 7 (2012). Therefore, because Hearing Officer Strickland did not act as a fact-finder and was limited to a review of the evidence

5

presented at the original August 2 hearing, this Court concludes that it is Hearing Officer Longanecker's decision that will be reviewed on appeal.

B. *Standard of Review*

When the decision of an administrative agency is appealed pursuant to M.R. Civ. P. 80C, this court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Servs.*, 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551 (citing *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258). The court will "not attempt to second-guess the agency on matters falling within its realm of expertise" and judicial review is limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). "Inconsistent evidence will not render an agency decision unsupported." *Seider*, 2000 ME 206, ¶ 9, 762 A.2d 551. The burden of proof rests with the party seeking to overturn the agency's decision, and that party must prove that no competent evidence supports the Board's decision. *See Bischoff v. Bd. of Trs.*, 661 A.2d 167, 170 (Me. 1995).

B. *Factual Findings*

The Respondent contends that Hearing Officer Longanecker's decision to impute no income to Scott was based upon factual findings not presented as evidence in the child support hearing. In particular, the respondent points out that Hearing Officer Longanecker found that Scott was "homeless," "sleeping on the street," "eating at soup kitchens," and experiencing a "housing and

employment crisis," even though no evidence in the child support hearing record supported those findings.

Pursuant to 5 M.R.S.A. § 9059(4) (2012) of the Administrative Procedures Act, "[a]ll material, including records, reports and documents in the possession of the agency, of which it desires to avail itself as evidence in making a decision, shall be offered and made a part of the record and no other factual information or evidence shall be considered in rendering a decision." 5 M.R.S. § 9059(4) (2012). Therefore, "[t]o the extent that an agency relies on information obtained outside of the record and the proceedings it has acted improperly." *Forbes v. Twn. Of Southwest Harbor*, 2001 ME 9, ¶ 14, 763 A.2d 1183. Additionally, an agency must not make factual findings based on evidence presented at a separate proceeding involving the same parties, unless that evidence was made part of the present record. *P.U.C. v. Cole's Express*, 138 A.2d 466, 474 (Me. 1958).

After an independent review of the record, the Court concludes that Hearing Officer Longanecker's findings that Scott was, "homeless," "sleeping on the street," "eating at soup kitchens," and experiencing a "housing and employment crisis," is not supported by record evidence presented solely during the August 2, 2012, child support hearing. (*See* Tr. C.S. 1-11 (Aug. 2, 2012) ; *but c.f.* Tr. L.S. 6-8 (Aug. 2, 2012) (statements made by Scott and his father about Scott's current housing and employment situation).) The record evidence shows that the above-mentioned findings by Hearing Officer Longanecker's are based on the testimony of Scott and his father at the separate license revocation hearing

also held on August 2, 2012, and presided over by Hearing Officer Longanecker.[2] Because the hearing officer relied upon evidence not on the record of the child support hearing, the decision to modify Scott's child support obligation must be vacated, and the case be remanded back to DHHS for a decision consistent with the record evidence presented at the Child Support Hearing alone. *See* 5 M.R.S. § 9059(4) (2012); *Forbes*, 2001 ME 9, ¶ 14, 763 A.2d 1183.

Therefore, the entry is:

The decision to modify the child support obligation of Adam Scott is VACATED and the case is remanded to the Department of Health and Human Services to issue a child support decision based solely on evidence in the child support hearing.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: August 15, 2013

_____
Joyce A. Wheeler
Justice, Superior Court

Petitioner-Faith D Tinsman (Pro Se)
Respondent-Carlos Diaz AAG
PII-Adam Scott (Pro Se)

---

[2] Although not the operative decision being reviewed, it is worth noting that the administrative appeal decision affirming the child support decision similarly relied upon evidence not presented at the child support hearing.